2023-1652

UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

J.D. IRVING, LTD.,
*Plaintiff-Appellant*

v.

UNITED STATES and UNITED STATES DEPARTMENT OF COMMERCE,
*Defendants-Appellees*

Appeal from the United States Court of International Trade
in Case No. 21-00641, Judge Timothy M. Reif

## BRIEF OF DEFENDANTS-APPELLEES

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

PATRICIA M. McCARTHY
Director

CLAUDIA BURKE
Deputy Director

OF COUNSEL

PAUL KEITH
Assistant Chief Counsel
Office of the Chief Counsel for
  Trade Enforcement & Compliance
U.S. Department of Commerce

ERIC E. LAUFGRABEN
Senior Trial Counsel
Commercial Litigation Branch
Civil Division
U.S. Department of Justice
P.O. Box 480
Ben Franklin Station
Washington, DC 20044
Telephone: (202) 353-7995
Email: Eric.E.Laufgraben@usdoj.gov

August 16, 2023

Attorneys for Defendant

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................... iii

STATEMENT OF RELATED CASES .................................................... vi

INTRODUCTION ................................................................................... 1

STATEMENT OF THE ISSUES ............................................................. 3

STATEMENT OF THE CASE ................................................................ 3

I.  Statutory And Regulatory Background ................................. 3

II.  Factual Background ............................................................... 5

III.  Commerce Addressed J.D. Irving's Cash Deposit Arguments
In The AR 2 Final Results ...................................................... 10

IV.  The Proceedings Below .......................................................... 11

SUMMARY OF ARGUMENT ............................................................... 12

ARGUMENT .......................................................................................... 14

I.  Standard Of Review .............................................................. 14

II.  Because Binational Panel Review Has Been Requested,
The Court Of International Trade Lacks Jurisdiction To
Entertain J.D. Irving's Suit .................................................. 14

    A.  Jurisdiction Under Section 1581 ............................... 14

    B.  Because The AR 2 Final Results Are Pending Before
    A Binational Panel, The Court Of International Trade
    Has No Jurisdiction To Entertain J.D. Irving's Suit ... 19

    C.  The Jurisdictional Bars Contain No Applicable Exception ... 25

III. J.D. Irving Does Not Meet The General Section 1581(i)(1) Standard .................................................................................... 28

    A. J.D. Irving Could Have Brought Its Suit Under Section 1581(c) But For The Binational Panel Review Request ............... 29

    B. J.D. Irving's Available Remedies Are Not Manifestly Inadequate ..................................................................... 29

        1. The Binational Panel Could Provide J.D. Irving With Meaningful Relief ................................................ 30

        2. J.D. Irving Could Also Obtain Meaningful Relief Through Administrative Review .................................. 35

            a. Financial Relief Is Available Through Administrative Review .......................................... 36

            b. J.D. Irving's Harm Allegations Do Not Show That Administrative Reviews Are Manifestly Inadequate ...................................... 38

            c. J.D. Irving's Preference For A Court Order Does Not Render Alternatives Manifestly Inadequate ................................................... 40

CONCLUSION ........................................................................... 42

# TABLE OF AUTHORITIES

## Cases

*Am. Signature, Inc. v. United States,*
　No. 07-1216, 2007 WL 4224210 (Fed. Cir. Nov. 30, 2007) ........... 22, 23, 23, 24

*Am. Signature, Inc. v. United States,*
　477 F. Supp. 2d 1281 (Ct. Int'l Trade 2007) .................................... 23

*ARP Materials, Inc. v. United States,*
　47 F.4th 1370 (Fed. Cir. 2022) ....................................... 14, 16, 28, 29

*Bhullar v. United States,*
　93 Fed. App'x 218 (Fed. Cir. 2004) ................................................. 27

*Bldg. Sys. de Mexico v. United States,*
　476 F. Supp. 3d 1401 (Ct. Int'l Trade 2020) ................................... 31

*Canadian Lumber Trade Alliance v. United States,*
　517 F.3d 1319 (Fed. Cir. 2008) ......................................................... 33

*Canadian Solar Int'l Ltd. v. United States,*
　68 F.4th 1267 (Fed. Cir. 2023) ......................................................... 3, 4

*Canadian Wheat Bd. v. United States,*
　641 F.3d 1344 (Fed. Cir. 2011) ......................................................... 34

*Consolidated Bearings Co. v. United States,*
　348 F.3d 997 (Fed. Cir. 2003) .................................................... 23, 24

*Cooper Tire & Rubber Co. v. United States,*
　217 F. Supp. 3d 1373 (Ct. Int'l Trade 2017) ................................... 40

*Cooper v. McDonough,*
　57 F.4th 1366 (Fed. Cir. 2023) ......................................................... 25

*Elkem Metals Co. v. United States,*
　196 F. Supp. 2d 1367 (Ct. Int'l Trade 2002) ................................... 39

*Erwin Hymer Grp. N. Am., Inc. v. United States*,
   930 F.3d 1370 (Fed. Cir. 2019) ..................................................... 14, 16

*Georgetown Steel Corp. v. United States*,
   801 F.2d 1308 (Fed. Cir. 1986) ........................................................ 26

*Hartford Fire Ins. Co. v. United States*,
   544 F.3d 1289 (Fed. Cir. 2008) ................................................. 14, 29

*Intercontinental Chems. LLC v. United States*,
   483 F. Supp. 3d 1232 (Ct. Int'l Trade 2020) ................................... 22

*J.D. Irving, Ltd. v. United States*,
   615 F. Supp. 3d 1323 (Ct. Int'l Trade 2023) ..................................... 3

*Mittal Canada, Inc. v. United States*,
   414 F. Supp. 2d 1347 (Ct. Int'l Trade 2006) ................................... 22

*Ontario Forest Indus. Ass'n v. United States*,
   444 F. Supp. 2d 1309 (Ct. Int'l Trade 2006) ................................... 39

*Sioux Honey Ass'n v. Hartford Fire Ins. Co.*,
   672 F.3d 1041 (Fed. Cir. 2012) .......................................................... 4

*SNIPR Techs. Ltd. v. Rockefeller Univ.*,
   72 F.4th 1372 (Fed. Cir. 2023) ........................................................ 26

*Sunpreme, Inc. v. United States*,
   892 F.3d 1188 (Fed. Cir. 2018) ........................................................ 38

*Tembec, Inc. v. United States*,
   441 F. Supp. 2d 1302 (Ct. Int'l Trade 2006) ................................... 39

*Wanxiang Am. Corp. v. United States*,
   399 F. Supp. 3d 1323 (Ct. Int'l Trade 2007) ................................... 22

## Statutes

19 U.S.C. § 1516a ............................................................. *passim*

19 U.S.C. § 1673f ........................................................................ 5, 8, 37

19 U.S.C. § 1675 ....................................................................4 , 5, 6, 19

28 U.S.C. § 1581 ........................................................................... *passim*

28 U.S.C. § 2643 ....................................................................... 33, 34

USMCA Implementation Act, Pub. L. 116-113, 134 Stat 11 (2020) .................... 15

## Legislative History

S. Rep. No. 100-509 ................................................................. 18, 26

H.R. Rep. No. 103-361 .................................................................17

## Administrative Materials

19 C.F.R. § 351.212 ................................................................... 4, 9

19 C.F.R. § 351.213 ................................................................... 4

83 Fed. Reg. 350 (Dep't of Commerce Jan. 3, 2018) ............................... 6

85 Fed. Reg. 76,519 (Dep't of Commerce Nov. 30, 2020) .................... 9

86 Fed. Reg. 68,471 (Dep't of Commerce Dec. 2, 2021) ...................... 9

88 Fed. Reg. 50,106 (Dep't of Commerce Aug. 1, 2023) ...................... 7, 9, 37, 38

*Stainless Steel Sheet & Strip In Coils From Mexico: Final Results of 2004/2005
Antidumping Review*,
   No. USA-MEX-2007-1904-1, 2011 WL 5024830 (NAFTA Aug. 17, 2011) ... 31

# STATEMENT OF RELATED CASES

Pursuant to Federal Circuit Rule 47.5, counsel for defendants-appellees states that he is unaware of any other appeal in or from this civil action that was previously before this Court or any other appellate court. The pending case before the United States Court of International Trade, *J.D. Irving, Ltd. v. United States and U.S. Department of Commerce*, Court No. 22-00256, involves the same parties and legal issues. The proceedings in Court No. 22-00256 are stayed pending resolution of this appeal and therefore may be directly affected by the Court's decision in this appeal.

## INTRODUCTION

The binational panel review system is a hallmark of the United States-Mexico-Canada Agreement (USMCA) and its predecessor free trade agreements that has been in place for the past 35 years. In implementing that system, Congress prohibited judicial review of final antidumping determinations involving Canadian merchandise when binational panel review is requested. To address the risk that a litigant may seek to evade the binational panel system by invoking the Court of International Trade's (trial court) "residual" jurisdiction under 28 U.S.C. § 1581(i)(1), Congress barred jurisdiction over final antidumping determinations reviewable by a binational panel.

In this appeal, plaintiff-appellant J.D. Irving Ltd. (J.D. Irving) asks this Court to allow what Congress intended to prohibit—Court of International Trade review of a final antidumping determination for which binational panel review has been requested. J.D. Irving characterizes its suit as a challenge to "cash deposit instructions," as opposed to a final antidumping determination, such that it may still invoke Court of International Trade jurisdiction under a different provision. But J.D. Irving already raised its cash deposit arguments as part of the relevant administrative review and Commerce rejected them in its final determination. The cash deposit instructions just carry out that determination. Thus, J.D. Irving's suit

represents a challenge to Commerce's final antidumping determination, not to cash deposit instructions.

The Court of International Trade correctly held that it lacked subject-matter jurisdiction to entertain J.D. Irving's suit. To begin with, because J.D. Irving's suit challenges a final antidumping determination that is a subject to a binational panel review request, the jurisdictional bars in Section 1581(i)(2)(B) and 19 U.S.C. § 1516a(g)(2) prohibit Court of International Trade review of that determination. Indeed, Congress enacted those bars to prevent the scenario arising here—when a litigant seeks to evade the binational panel review system—and they should be enforced.

But even if the Court considered the general standard for invoking Section 1581(i)(1) jurisdiction, J.D. Irving does not meet it. Section 1581(i)(1) jurisdiction may be invoked if no other jurisdictional provision is or could have been available unless the available remedies are manifestly inadequate. Here, J.D. Irving's challenge to Commerce's antidumping determination could have been brought under Section 1581(c), which provides for Court of International Trade jurisdiction over final antidumping determinations, but for the binational panel review request. And J.D. Irving's remedies are not manifestly inadequate given that they could provide meaningful relief.

Because J.D. Irving fails to show that the Court of International Trade has Section 1581(i)(1) jurisdiction over its claims, the decision below should be affirmed.

## STATEMENT OF THE ISSUES

1.      Whether the "true nature" of J.D. Irving's suit challenges a final antidumping determination that is subject to a binational panel review request such that the jurisdictional bars in 28 U.S.C. § 1581(i)(2)(B) and 19 U.S.C. § 1516a(g)(2) foreclose Court of International Trade jurisdiction over this suit.

2.      If the jurisdictional bars contain an implied exception for "manifestly inadequate" binational panel remedies, whether J.D. Irving's available remedies are "manifestly inadequate."

## STATEMENT OF THE CASE

J.D. Irving appeals the Court of International Trade's decision in *J.D. Irving, Ltd. v. United States*, 615 F. Supp. 3d 1323 (Ct. Int'l Trade 2023), which dismissed J.D. Irving's suit for lack of subject matter jurisdiction.

## I.      Statutory And Regulatory Background

"Commerce imposes antidumping duties when it 'determines that a class or kind of foreign merchandise is being, or is likely to be, sold in the United States at less than its fair value,' resulting in actual or threatened harm to a domestic industry." *Canadian Solar Int'l Ltd. v. United States*, 68 F.4th 1267, 1270 (Fed.

Cir. 2023) (quoting 19 U.S.C. § 1673)). "Foreign exporters of merchandise that is subject to an antidumping duty order must deposit preliminary estimated antidumping duties" (*i.e.*, cash deposits) "when the merchandise enters the United States, but the final antidumping duty rate is determined later, during annual retrospective administrative reviews." *Id.* (citing 19 C.F.R. § 351.212(a)). Thus, the cash deposits paid during a given period represent estimated antidumping duties, which are not resolved until the period's completion. *See Sioux Honey Ass'n v. Hartford Fire Ins. Co.*, 672 F.3d 1041, 1047 (Fed. Cir. 2012).

Each year, on the anniversary date of the antidumping duty order, parties choose whether to seek an administrative review of their entries (or, for a domestic interested party, another party's entries) to determine whether the dumping margin has changed during the review period. 19 U.S.C. § 1675(a)(1), (2); 19 C.F.R. § 351.213.

If no review is requested for a given period, Commerce assesses final antidumping duties at "rates equal to the cash deposit of . . . estimated antidumping duties" paid at entry. 19 C.F.R. § 351.212(c)(1)(i).

If review is requested for a given period, Commerce determines the final antidumping duties for that period based on the record created during an administrative review. Commerce's determination generally has two effects—one retrospective, the other prospective. As for the retrospective effect, the specific

entries in the review period are "liquidated" (assessed final antidumping duties) at the rates determined in the administrative review—assuming no appeals. 19 U.S.C. § 1675(a)(2)(C).; *see also id*. § 1516a(c), (g)(5) As for the prospective effect, Commerce instructs Customs and Border Protection (CBP) to update the cash deposit rate for future entries to match the final antidumping duty rate determined in the administrative review. *Id*. § 1675(a)(2)(C).

If, after review, final antidumping duties owed are less than cash deposits paid, then Commerce refunds the overage with interest. 19 U.S.C. § 1673f(b)(2). If the final antidumping duties owed are more than cash deposits paid, then the party must make up the shortfall. *Id.*

But whether or not review is requested, Commerce does not separately set cash deposit rates for defined periods in the way it determines antidumping duties for a specific period of review. Rather, if the final antidumping duty changes from one period to another, Commerce adjusts the cash deposit rate—up or down— based on its most-recent antidumping duty rate determination.

## II.     Factual Background

J.D. Irving is a Canadian producer and exporter of softwood lumber products, and an importer of record. Appx37.

Commerce issued an antidumping order covering softwood lumber from Canada on January 3, 2018. *See Certain Softwood Lumber Products From*

*Canada: Antidumping Duty Order and Partial Amended Final Determination*, 83 Fed. Reg. 350 (Dep't of Commerce Jan. 3, 2018). Because J.D. Irving was not selected as a respondent in that investigation, Commerce assigned it the 6.04% "all-others" antidumping duty rate for non-selected companies and corresponding 6.04% cash deposit rate.[1]

Commerce initiated its first administrative review (AR 1) of the order for the June 30, 2017 to December 31, 2018 period of review, for which review of J.D. Irving was requested. Appx226-228. In the final results for AR 1, Commerce determined a 1.57% all-others antidumping duty rate for entries during the period of review. Appx227. Commerce also issued cash deposit requirements for future entries, which adjusted the existing 6.04% cash deposit rate to match the 1.57% antidumping duty rate assessed in the AR 1 final results. Appx227; *see also* Appx219.

Before AR 1 was complete, Commerce began a second administrative review for the 2019 period (AR 2) on March 10, 2020, in which review was again requested of J.D. Irving. Appx83-85.

---

[1] Under 19 U.S.C. § 1675(a), "interested parties," including domestic and foreign producers, and importers, may request administrative reviews. When Commerce selects a respondent for review, it calculates a company-specific antidumping duty rate. For participating, but non-selected companies, Commerce calculates an "all-others" rate by averaging the margins for selected respondents. Appx83.

And before AR 2 was completed, Commerce initiated the third review for the 2020 period (AR 3).  Because no party sought review of J.D. Irving's entries in AR 3, Commerce instructed CBP to liquidate J.D. Irving's 2020 entries at the cash deposit rates (6.04% and 1.57%) in effect on the dates of entry.  Appx142.

J.D. Irving continued to pay 1.57% cash deposits for the first eleven months of 2021, until Commerce issued the AR 2 final results, which assessed an 11.59% antidumping duty on J.D. Irving's entries for that period.  Appx83-84.  Commerce notified CBP that the cash deposit rate had been revised and instructed CBP to collect cash deposits on J.D. Irving's (and others') entries beginning on December 2, 2021 at the 11.59% rate.  Appx53, Appx64.

About two weeks ago, on August 1, 2023, Commerce released the final results for the fourth review for the 2021 period (AR 4), in which J.D. Irving had requested review of its entries.  *See Certain Softwood Lumber Prods. from Canada: Final Results of Antidumping Administrative Review; 2021*, 88 Fed. Reg. 50,106, 50,107 (Dep't of Commerce Aug. 1, 2023).  The AR 4 final results assessed a 6.20% final antidumping duty on J.D. Irving's 2021 entries—higher than the 1.57% cash deposit rate paid between January and November 2021, but

lower than the 11.59% cash deposit rate paid in December 2021.[2]  Where J.D.

Irving's AR 4 final assessed antidumping duties exceed the cash deposits paid, J.D.

Irving will receive a refund with interest; where its final duties are less than the

cash deposits paid, J.D. Irving must make up the shortfall.  19 U.S.C.

§ 1673f(b)(2).

 Keeping track of the changes is often challenging because the administrative

review process may span multiple years.  For instance, the review for 2019 was

requested in 2020; the final results were issued in 2021.  The dumping rate

established was used as the cash deposit rate for entries between December 2021

until August 2023.  Below is a chart reflecting, by year, the cash deposit rate paid

by J.D. Irving and the assessed antidumping duty rate.

---

[2]  Although J.D. Irving is no longer subject to the 11.59% cash deposit rate,
we acknowledge that its claim is not moot given its contention that it was (and still
is) entitled to the 1.57% cash deposit rate in the first place.

| | 2019 | 2020 | | 2021 | | 2022 | 2023 | |
|---|---|---|---|---|---|---|---|---|
| | | Jan – Nov. 2020[3] | Dec. 2020 | Jan – Nov. 2021[4] | Dec. 2021 | | Jan. – July 2023[5] | Aug. 2023 – Present |
| Cash Deposit Rate | 6.04% | 6.04% | 1.57% | 1.57% | 11.59% | 11.59% | 11.59% | 6.20% |
| Assessed Antidumping Duty Rate | 11.59% | 6.04% | 1.57% | 6.20% | | TBD | TBD | |
| J.D. Irving Review Requested | Yes | No | | Yes | | Yes | TBD | |
| Review Period | AR 2 | AR 3 | | AR 4 | | AR 5 | AR 6 (if requested) | |

Thus, although J.D. Irving uses the terms "2019 AD Cash Deposit Rate" and "2020 AD Cash Deposit Rate," *see, e.g.*, J.D. Irving Br. at 12, 13, 18, those terms are inaccurate. As shown above, J.D. Irving paid more than one cash deposit rate during 2020, 2021, and 2023 because those cash deposit rates were adjusted during those years to match the final antidumping "rates established in the completed review covering the most recent time period[.]" 19 C.F.R. § 351.212(a). Thus, J.D. Irving's cash deposit rates were updated in connection with the AR 1, AR 2, and AR 4 final antidumping duties determined in the concluded reviews.

---

[3] Appx 226 (*Certain Softwood Lumber Prods. from Canada: Final Results of Antidumping Administrative Review; 2017-2018*, 85 Fed. Reg. 76,519 (Dep't of Commerce Nov. 30, 2020)).

[4] Appx82 (*Certain Softwood Lumber Prods. from Canada: Final Results of Antidumping Administrative Review; 2019*, 86 Fed. Reg. 68,471 (Dep't of Commerce Dec. 2, 2021).

[5] *See Certain Softwood Lumber Prods. from Canada: Final Results of Antidumping Administrative Review; 2021*, 88 Fed. Reg. 50,106 (Dep't of Commerce Aug. 1, 2023).

III.  Commerce Addressed J.D. Irving's Cash Deposit Arguments In The AR 2 Final Results

In the AR 2 preliminary results, Commerce stated that it intended to adjust the cash deposit rate to match the AR 2 final antidumping duty—and given the preliminary findings, the rate would likely increase over the 1.57% antidumping duty rate established in AR 1.  Appx42-43.  As an AR 2 participant, J.D. Irving argued in a case brief that Commerce must maintain the 1.57% AR 1 antidumping duty rate as the cash deposit rate, no matter the results of AR 2.  Appx98-104. Under J.D. Irving's theory, because no review of its 2020 entries was requested in AR 3, J.D. Irving formed an "agreement" with Commerce—not just to liquidate AR 3 entries at the cash deposits paid, but to maintain the 1.57% cash deposit rate indefinitely, even if the final antidumping duty rate changed in AR 2.

Commerce addressed J.D. Irving's arguments in the AR 2 final results and determined that they relied on an erroneous understanding of the regulatory scheme for cash deposits.  Appx176.  Commerce explained that it updates cash deposit rates for entries of reviewed companies in the relevant period of review based on the final results of administrative reviews.  Appx175.  Thus, Commerce would not maintain the 1.57% rate when the AR 2 final results established a new 11.59% cash deposit rate.  Appx175.

IV.    The Proceedings Below

J.D. Irving filed a Notice of Intent to Commence Judicial Review seeking judicial review of the AR 2 final results with the USMCA Secretariat on December 21, 2021, Appx109, but a week later on December 28, 2021, certain Canadian parties requested binational panel review.  Appx34-35.  By statute, the panel review request forecloses the Court of International Trade's usual jurisdiction to review final results.  28 U.S.C. § 1581(i)(2)(B); 19 U.S.C. § 1516a(g)(3)(B).

Nonetheless, on December 30, 2021, J.D. Irving filed suit alleging jurisdiction under the Court of International Trade's "residual" jurisdiction provision, 28 U.S.C. § 1581(i).  J.D. Irving's complaint demanded an order directing Commerce to: replace the 11.59% cash deposit rate with the prior 1.57% cash deposit rate for entries after December 2, 2021; refund all cash deposits paid in excess of 1.57%; and maintain 1.57% as the cash deposit rate indefinitely.  Appx49.  The complaint also asked the court for a declaration that Commerce acted unlawfully by instructing CBP to update the cash deposit rate to match the 11.59% final antidumping duty rate determined in the AR 2 final results.  Appx49.

The Court of International Trade dismissed J.D. Irving's suit for lack of subject matter jurisdiction under USCIT Rule 12(b)(1).  The court explained that Section 1581(i)(1) jurisdiction may not be invoked if jurisdiction under another provision was or could have been available unless the remedy available is

manifestly inadequate, and J.D. Irving failed to meet either requirement. First, the

court determined that J.D. Irving's suit challenged the AR 2 final results—a final

antidumping determination—rather than "administration and enforcement" of a

determination. Appx10. And the final antidumping determination could have been

brought under Section 1581(c), which permits review over, among other things,

final antidumping duty determinations, but for the binational panel review request.

Appx10. Second, the court determined that the relief available to J.D. Irving

through binational panel review of the AR 2 final results, and the administrative

review process for later review periods is not manifestly inadequate because J.D.

Irving could be made whole through those channels. Appx12-15. This appeal

followed.

## SUMMARY OF ARGUMENT

The Court of International Trade lacks jurisdiction to entertain J.D. Irving's

suit.

Under Section 1581(i)(2)(B) and 19 U.S.C. § 1516a(g)(2), Congress

foreclosed Court of International Trade jurisdiction over a final antidumping

determination that is the subject of a binational panel review request. A key

purpose of these jurisdictional bars was to prevent a litigant, such as J.D. Irving,

from circumventing the binational panel system and they should be enforced.

Here, although J.D. Irving characterizes its suit as a challenge to cash deposit

instructions, rather than to a final antidumping determination, the "true nature" of its suit is a challenge to the AR 2 final results—not cash deposit instructions. And because the AR 2 final results comprise a "determination" subject to the jurisdictional bars, J.D. Irving cannot pursue its challenge in the Court of International Trade. No exception to these jurisdictional bars applies.

Although the Court's jurisdictional inquiry should end there, even if the Court has considered whether J.D. Irving may invoke Section 1581(i)(1) under the general standard—whether a different jurisdictional provision is or could have been available to the plaintiff, unless the available remedies are manifestly inadequate—J.D. Irving does not meet either prong of that standard. First, because the AR 2 final results comprise a final antidumping determination under 19 U.S.C. § 1516a, J.D. Irving could have brought its suit under Section 1581(c), but for the binational panel review request. Second, the remedies available to J.D. Irving are not manifestly inadequate given that J.D. Irving could obtain, in substance, the relief it seeks here from a binational panel or through administrative review.

Because J.D. Irving fails to show that the Court of International Trade possessed jurisdiction to entertain its suit, the judgment below should be affirmed.

## ARGUMENT

### I.     Standard Of Review

This Court reviews *de novo* Court of International Trade decisions dismissing complaints for lack of subject matter jurisdiction. *ARP Materials, Inc. v. United States*, 47 F.4th 1370, 1376 (Fed. Cir. 2022).

### II.    Because Binational Panel Review Has Been Requested, The Court Of International Trade Lacks Jurisdiction To Entertain J.D. Irving's Suit

To determine whether the Court of International Trade possesses jurisdiction, the court must determine the true nature of the complaint. *See Hartford Fire Ins. Co. v. United States*, 544 F.3d 1289, 1292-93 (Fed. Cir. 2008); *Erwin Hymer Grp. N. Am., Inc. v. United States*, 930 F.3d 1370, 1376 (Fed. Cir. 2019). As we demonstrate below, the true nature of J.D. Irving's suit challenges the AR 2 final results—a final antidumping determination—meaning that J.D. Irving cannot invoke the court's jurisdiction under Section 1581(i)(1).

#### A.     Jurisdiction Under Section 1581

Court of International Trade jurisdiction is "governed by 28 U.S.C. § 1581, with each of its subsections 'delineating particular laws over which the Court of International Trade may assert jurisdiction.'" *ARP Materials, Inc.*, 47 F.4th at 1377 (quoting *Nat'l Corn Growers Ass'n v. Baker*, 840 F.2d 1547, 1555 (Fed. Cir. 1988)). The two provisions relevant to this appeal are Section 1581(c) and Section 1581(i).

Section 1581(c) provides:

> (c) The Court of International Trade shall have exclusive jurisdiction of any civil action commenced under [19 U.S.C. §§ 1516a, 1517].

28 U.S.C. § 1581(c).

Section 1581(i)(1) provides:[6]

> [T]he Court of International Trade shall have exclusive jurisdiction of any civil action commenced against the United States, its agencies, or its officers, that arises out of any law of the United States providing for—
>
> > (A) revenue from imports or tonnage;
> >
> > (B) tariffs, duties, fees, or other taxes on the importation of merchandise for reasons other than the raising of revenue;
> >
> > (C) embargoes or other quantitative restrictions on the importation of merchandise for reasons other than the protection of the public health or safety; or
> >
> > (D) administration and enforcement with respect to the matters referred to in subparagraphs (A)

---

[6] Under the USMCA Implementation Act, Congress renumbered the paragraphs under the first part of 28 U.S.C. § 1581(i) as 28 U.S.C. § 1581(i)(1)(A)-(D). Previously, those paragraphs were numbered 28 U.S.C. § 1581(i)(1)-(4). *See* USMCA Implementation Act, Pub. L. 116-113, 134 Stat 11, 65, § 423 (2020). Thus, what is now 28 U.S.C. § 1581(i)(1)(A) was previously § 1581(i)(1); what is now § 1581(i)(1)(B) was previously § 1581(i)(2), and so forth.

In addition, before Congress enacted the USMCA Implementation Act, the text that is now at 28 U.S.C. § 1581(i)(2)(A)-(B) was a standalone paragraph under 28 U.S.C. § 1581(i).

through (C) of this paragraph and subsections (a) to (h)
of this section.

28 U.S.C. § 1581(i)(1).

Section 1581(i)(1) is often called the Court of International Trade's "residual jurisdiction," but Federal Circuit "precedent is 'unambiguous [and] clear that [§ 1581(i)(1)'s] scope is strictly limited.'" *Erwin Hymer Grp. N. Am.*, 930 F.3d at 1374 (first alteration in original) (quoting *Norcal/Crosetti Foods, Inc. v. United States*, 961 F.2d 356, 359 (Fed. Cir. 1992)). "This is so because an 'overly broad interpretation' of § 1581(i) would otherwise 'threaten to swallow the specific grants of jurisdiction contained within the other subsections.'" *Id.* (quoting *Norman G. Jensen, Inc. v. United States*, 687 F.3d 1325, 1329 (Fed. Cir. 2012)).

Accordingly, the Federal Circuit has determined that Section 1581(i)(1) "jurisdiction may not be invoked when jurisdiction under another subsection of § 1581 is or could have been available, unless the remedy provided under that other subsection would be manifestly inadequate." *ARP Materials, Inc.*, 47 F.4th at 1377 (quoting *Norcal/Crosetti Foods*, 963 F.2d at 359)).

Section 1581(i)(2)(B) further clarifies limits on Court of International Trade jurisdiction when an antidumping determination is subject to review by a binational panel:

> (2) This subsection shall not confer jurisdiction over an antidumping or countervailing duty determination which is reviewable by—

>> (B) a binational panel under section 516A(g) of the Tariff Act of 1930 (19 U.S.C. 1516a(g)).

28 U.S.C. § 1581(i)(2).

As the Court of International Trade explained, the purpose of Section 1581(i)(2) was to "assure that a litigant cannot invoke the CIT's 'residual jurisdiction' . . . for the purpose of circumventing the binational panel system." Appx8 (quoting S. Rep. 100-509, at 35). Thus, in enacting Section 1581(i)(2)(B), Congress clarified its intent to "to withdraw jurisdiction from the CIT over [antidumping] determinations" that are reviewable by binational panels. H.R. Rep. 103-361, at 86; *see also* Appx8.

And on top of the jurisdictional bar in Section 1581(i)(2), Congress also foreclosed Court of International Trade jurisdiction to review a determination that is subject to a binational panel review request under 19 U.S.C. § 1516a(g)(2):

> **(2) Exclusive review of determination by binational panels.**

> If binational panel review of a determination is requested pursuant to article 1904 of the Agreement or article 10.12 of the USMCA, then except as provided in paragraphs (3) and (4)—

>> (A) the determination is not reviewable under subsection (a), and

         (B) no court of the United States has power or
jurisdiction to review the determination on any question of law
or fact by an action in the nature of mandamus or otherwise.

19 U.S.C. § 1516a(g)(2) (bold in original).

In enacting 19 U.S.C. § 1516a(g)(2), Congress confirmed the "general rule

that [antidumping] determinations . . . are not subject to [judicial] review under [19

U.S.C. § 1516a], or otherwise subject to judicial review, if binational panel review

of a determination is requested pursuant to, and within the time limits described

under, Article 1904 of the Agreement." S. Rep. 100-509, at 29. There are six

exceptions to the jurisdictional bar: when no country requests binational panel

review; a revised determination was issued as a result of judicial review; the

determination was issued as a result of judicial review before the USMCA or its

predecessor agreements went into force; the panel itself finds that it cannot review

a determination; binational panel review has terminated under Art. 10.13 of the

USMCA; or extraordinary challenge committee review has terminated under Art.

10.13 of the USMCA. *See* 19 U.S.C. § 1516a(g)(3). In addition, Congress

provided an exception for review of certain constitutional issues. *Id.*

§ 1516a(g)(4). None of these exceptions are applicable here and no others exist.

**B.** Because The AR 2 Final Results Are Pending Before A Binational Panel, The Court Of International Trade Has No Jurisdiction To Entertain J.D. Irving's Suit

The jurisdictional bars apply when a binational panel review has been requested for an antidumping determination. 19 U.S.C. § 1516a(g)(2); 28 U.S.C. § 1581(i)(2)(B).

Under 19 U.S.C. § 1516a(g)(1)(B), a "determination" reviewable by a binational panel "means a determination described in—. . . (B) clause (i), (ii), (iii), (vi), or (vii) of [19 U.S.C. § 1516a(a)(2)(B)]" in connection with a proceeding involving Canadian or Mexican merchandise. 19 U.S.C. § 1516a(g)(1)(B). In turn, 19 U.S.C. § 1516a(a)(2)(B)(iii) refers to a "final determination . . . by [Commerce] under section 1675 of [Title 19 of the United States Code]." *See* 19 U.S.C. § 1516a(a)(2)(B)(iii), (g)(1)(B). And 19 U.S.C. § 1675 applies to "administrative review of determinations" in antidumping cases. Thus, these statutes show that a "determination" reviewable by a binational panel under 19 U.S.C. § 1516a(g)(1)(B) includes a final antidumping determination by Commerce in an administrative review of an antidumping order.

Here, the AR 2 final results comprise a final antidumping determination subject to a binational panel review request, so the jurisdictional bars in Section 1581(i)(2)(B) and 19 U.S.C. § 1516a(g)(2) apply. Although J.D. Irving contends that its suit challenges cash deposit instructions, not the AR 2 final results, such

that its suit does not challenge a "determination" under 19 U.S.C. 1516a(g)(1), the "true nature" of J.D. Irving's suit challenges the AR 2 final results. Several points support this conclusion.

First, J.D. Irving confirmed in its Notice of Intent to Commence Judicial Review that it seeks review of a "final determination"—the AR 2 final results—not cash deposit instructions. Appx110 (identifying the reviewable determination as *Certain Softwood Lumber Products from Canada: Final Results of Antidumping Administrative Review; 2019*").

Second, J.D. Irving's complaint also conceded that jurisdiction would "[n]ormally" arise under Section 1581(c), which applies to final antidumping duty determinations such as the AR 2 final results, but for the binational panel review request. Appx34.

Third, although J.D. Irving portrays the AR 2 final results as pertaining *only* to antidumping duties, J.D. Irving Br. at 27-29, the final results address both "the basis for the assessment of antidumping duties on entries of merchandise under review *and* for future cash deposits of estimated duties, where applicable." Appx84 (emphasis added).

Fourth, the AR 2 final results contain Commerce's determination that the cash deposit rate will be revised prospectively to match the AR 2 antidumping duty rate. Appx174-176. Indeed, the Issues and Decisions Memorandum

accompanying the AR 2 final results sets forth Commerce's rationale for rejecting

J.D. Irving's cash deposit arguments. Appx174-176. Thus, the contested cash

deposit rate arises from the AR 2 final results. Appx83-84.

Fifth, the same administrative record supports the AR 2 final results and the

cash deposit instructions, such that J.D. Irving cannot show that they reflect

separate determinations. And J.D. Irving fails to explain how a court could review

Commerce's rationale for adjusting the cash deposit rate in the cash deposit

instructions without considering the AR 2 final results. Appx101.

Thus, the true nature of J.D. Irving's suit is a challenge to the AR 2 final

results, which is a final antidumping determination subject to a binational panel

review request.

Although J.D. Irving argues that the "true nature" of its suit challenges the

cash deposit instructions, such that it is proper under Section 1581(i)(1)(D), rather

than the AR 2 final results themselves, the Court of International Trade correctly

determined that J.D. Irving's argument does not hold up against precedent.

Appx10. After canvassing several cases whose true nature was the "administration

and enforcement" of a determination, rather than the determination itself, the court

explained that those cases "involve[] Commerce's instructions to CBP in

circumstances in which the instructions are *inconsistent with* or *contain a legal

error that is distinct from* Commerce's determination." Appx10 (emphasis in

original) (*comparing Mittal Canada, Inc. v. United States*, 414 F. Supp. 2d 1347, 1353 (Ct. Int'l Trade 2006) (finding jurisdiction under 28 U.S.C. § 1581(i)(1)(D) where plaintiff alleged that Commerce's liquidation instructions "contravened" the final results of an administrative review), *with Wanxiang Am. Corp. v. United States*, 399 F. Supp. 3d 1323, 1331 & n.11 (Ct. Int'l Trade 2007) (concluding that the action could have been brought under 28 U.S.C. § 1581(c) where the contested guidance "reiterated— . . . rather than deviated from—the results of the administrative reviews"), and *Intercontinental Chems. LLC v. United States*, 483 F. Supp. 3d 1232, 1241 (Ct. Int'l Trade 2020) (when liquidation instructions were "not inconsistent[]" with the final results, "the underlying issue is therefore not with the liquidation instructions but with the Final Results.").

Although J.D. Irving attempts to distinguish *Mittal* and *Wanxiang* on their facts, the underlying point gleaned by the Court of International Trade—that a case's true nature involves "administration and enforcement" when Commerce's actions in carrying out a determination deviate from the determination itself or reflect a separate legal error, Appx10 (emphasis in original)—does not turn on those factual distinctions.

J.D. Irving cites two cases arising under Section 1581(i)(1)—*American Signature, Inc. v. United States*, No. 07-1216, 2007 WL 4224210 (Fed. Cir. Nov.

30, 2007); and *Consolidated Bearings Co. v. United States*, 348 F.3d 997 (Fed. Cir. 2003)—but those cases support the rule articulated by the trial court.

*American Signature*—an unpublished decision—involved a scenario in which Commerce corrected antidumping duty rates in amended final results and, in turn, corrected cash deposit rates, but did not refund the excess deposits paid under the duties before correction. 2007 WL 4224210*,* at *1. Although the importer would have obtained a refund of cash deposits paid in excess of the final antidumping duty after review if it participated, no review was requested for the importer. *See Am. Signature, Inc. v. United States*, 477 F. Supp. 2d 1281, 1288-89 (Ct. Int'l Trade 2007). Because the unreviewed entries would be liquidated at the cash deposit rates paid at the time of entry, if those rates were wrong, the entries would also be liquidated at the wrong rates. So unlike J.D. Irving, the *American Signature* plaintiff argued that the cash deposits paid conflicted with the cash deposits determined in the amended final results, and would be liquidated at the wrong rate, such that the "true nature" of the suit was a challenge to the liquidation instructions, not the final results of a review. *See Am. Signature*, 2007 WL 4224210, at *1-2. And although the Court noted "[t]he mere fact that Commerce addressed the implementation of antidumping rates in its final determination does not make the implementation itself a reviewable determination under § 1516a," the point was in response to the Government's argument that the *American Signature*

plaintiff could have raised its cash deposit argument had it participated in the review, when the plaintiff had elected to forgo administrative review. *Id.* at *2. The difference here is that J.D. Irving participated in AR 2, presented its cash deposit arguments to Commerce, and obtained a decision in the AR 2 final results on that point. Appx174-76. J.D. Irving cannot distance itself from the AR 2 final results simply because the cash deposit rate issue did not go its way.

Next, *Consolidated Bearings Co.* did not address the "true nature" of a claim at all—rather, it determined that an importer could invoke Section 1581(i)(1) because its claim did not fit in any other Section 1581 subsection. The importer contended that the final results of a recent administrative review should control its cash deposit rate, yet because the importer did not participate in that review, it could not challenge the review's final results under Section 1581(c). *Consol. Bearings*, 348 F.3d at 1002. Although the United States argued that jurisdiction would have been available if the importer participated in the review, this Court determined that accepting such an argument would improperly condition jurisdiction on a party's participation in an administrative review. *Id.* Thus, Section 1581(i)(1) jurisdiction was available because the plaintiff met the requirement that jurisdiction under another subsection of Section 1581 was unavailable. *Id.* The difference here is that J.D. Irving participated in AR 2, so the

final results address the cash deposit arguments raised by J.D. Irving in that review.  Appx174-176.

American Signature and Consolidated Bearings are thus consistent with the principle articulated by the Court of International Trade—that a case's true nature is a challenge to "administration and enforcement" when Commerce's instructions to CBP "are *inconsistent with* or *contain a legal error that is distinct from* Commerce's determination."  Appx10 (emphasis in original).  Here, because J.D. Irving identifies no conflict between the cash deposit instructions and the AR 2 final results, the true nature J.D. Irving's suit challenges the AR 2 final results— not cash deposit instructions.

C.    The Jurisdictional Bars Contain No Applicable Exception

Because the true nature of J.D. Irving's suit challenges the AR 2 final results, the jurisdictional bars in Section 1581(i)(2)(B) and 19 U.S.C. § 1516a(g)(2) foreclose Court of International Trade jurisdiction.

In construing a statute, "[t]he first step is to determine whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case."  *Cooper v. McDonough,* 57 F.4th 1366, 1369 (Fed. Cir. 2023) *(*quoting *Barnhart v. Sigmon Coal Co.,* 534 U.S. 438, 450 (2002)).  "The inquiry ceases if the statutory language is unambiguous and the statutory scheme is coherent and consistent."  *Id.* (internal quotation marks and citation omitted).

Thus, "[w]here Congress explicitly enumerates certain exceptions to a general prohibition, additional exceptions are not to be implied, in the absence of a contrary legislative intent." *SNIPR Techs. Ltd. v. Rockefeller Univ.*, 72 F.4th 1372, 1379 (Fed. Cir. 2023) (quoting *United States v. Smith*, 499 U.S. 160, 167 (1991)); *see also Georgetown Steel Corp. v. United States*, 801 F.2d 1308, 1312 (Fed. Cir. 1986) ("Since section 1516a(a)(2)(A) specifies the terms and conditions upon which the United States has waived its sovereign immunity in consenting to be sued in the Court of International Trade, those limitations must be strictly observed and are not subject to implied exceptions.").

Here, the plain language of Section 1581(i)(2)(B) and 19 U.S.C. § 1516a(g)(2) forecloses Court of International Trade jurisdiction over antidumping determinations that are reviewable by a binational panel under 19 U.S.C. § 1516a(g). Indeed, this result is consistent with legislative history. A "central feature" of the binational panel "mechanism is the replacement of domestic judicial review of determinations in antidumping and countervailing duty cases involving imports from the other party with review by binational panels." S. Rep. 100-509, at 28. Thus, Congress amended Section 1581(i) to "assure that a litigant cannot invoke the CIT's 'residual jurisdiction' provision, 28 U.S.C. 1581(i), for the purpose of circumventing the binational panel system[.]" *Id.*

J.D. Irving contends that Section 1581(i)(2)(B) must be read "interpreted in accord with this court's § 1581(i) jurisprudence," J.D. Irving Br. at 46, meaning that jurisdiction is available if binational panel remedies are "manifestly inadequate." But Congress provided a specific set of exceptions to the jurisdictional bar in 19 U.S.C. § 1516a(g)(2), none of which apply here. *See* 19 U.S.C. § 1516a(g)(3)-(4). J.D. Irving does not show that Congress intended the Court of International Trade to apply additional exceptions to the jurisdictional bars contained in Section 1581(i)(2)(B) and 19 U.S.C. § 1516a(g)(2). Plus, J.D. Irving does not cite any case in which a court has identified additional exceptions to 19 U.S.C. § 1516a(g)(2).

Even J.D. Irving acknowledges that an implied exception to the jurisdictional bars for manifestly inadequate remedies could only exist "despite the text" of Section 1581(i)(2)(B). *See* J.D. Irving Br. at 3. Given these circumstances, any interpretation of these jurisdictional bars that would allow J.D. Irving to invoke Court of International Trade jurisdiction because it believes binational panel remedies are "manifestly inadequate" would undermine Congress' intent to foreclose judicial review in these circumstances. *See Bhullar v. United States*, 93 Fed. App'x 218, 220 (Fed. Cir. 2004) (affirming dismissal under 19 U.S.C. § 1516a(g)(2) when binational panel review had been properly requested without addressing an exception for manifestly inadequate panel remedies).

And although J.D. Irving contends that it does not seek to circumvent the binational panel system, J.D. Irving Br. at 31, the fact that J.D. Irving filed its suit two days after another party requested panel review demonstrates otherwise. Appx33, Appx117. Given that the AR 2 final results are already subject to a binational panel, permitting the Court of International Trade to review the same determination would frustrate Congress' intent to prohibit judicial review when binational panel review is requested.

Because this suit challenges a final antidumping determination that is already the subject of an existing binational panel review request, the Court of International Trade correctly determined that it lacked jurisdiction. This Court's analysis may end here because the jurisdictional bars have no applicable exception. Even so, we explain below why an analysis of implied exception to Section 1581(i)(2)(B) for the "manifestly inadequate" remedies prong leads to the same result: affirmance of the court's dismissal.

III.     J.D. Irving Does Not Meet The General Section 1581(i)(1) Standard

Even if the general Section 1581(i)(1) standard applied, J.D. Irving could not meet it. Under that standard, the Court of International Trade lacks jurisdiction if (1) jurisdiction under another provision is or could have been available, unless (2) the remedies are manifestly inadequate. *See ARP Materials, Inc.*, 47 F.4th at 1377. Neither requirement is met here.

A. **J.D. Irving Could Have Brought Its Suit Under Section 1581(c) But For The Binational Panel Review Request**

As J.D. Irving concedes, it "[n]ormally" could have brought its suit under Section 1581(c), which provides jurisdiction over a civil action commenced under 19 U.S.C. § 1516a. Appx34. As we demonstrated above, the true nature of J.D. Irving's suit is a challenge to a the AR 2 final results, which comprise a determination under a subsection of that statute, 19 U.S.C. § 1516a(g)(1)(B). Thus, J.D. Irving could have brought its suit under Section 1581(c). Appx9-11.

B. **J.D. Irving's Available Remedies Are Not Manifestly Inadequate**

Even if the general Section 1581(i)(1) standard applied, J.D. Irving cannot circumvent binational panel review based on allegations that its available remedies are "manifestly inadequate."

A remedy is manifestly inadequate if it "constitutes an 'exercise in futility or [is] incapable of producing any result; failing utterly of the desired end through intrinsic defect; unless, ineffectual, [in] vain." Appx13 (quoting *Hartford Fire Ins. Co.*, 544 F.3d at 1294 (alteration by trial court)); *see also ARP Materials, Inc.*, 47 F.4th at 1379 (quoting *Sunpreme Inc. v. United States*, 892 F.3d 1186, 1193-94 (Fed. Cir. 2018)).

Here, J.D. Irving fails to show that its available relief is manifestly inadequate. J.D. Irving seeks: (1) an order directing Commerce to reinstate a 1.57% cash deposit rate retroactively to December 2, 2021, and to refund cash

deposits paid above 1.57%, J.D. Irving Br. at 32, 34; and (2) a "binding court ruling" that Commerce may not adjust the cash deposit rate for future periods if no review is requested in the current period, even if regulations require a new cash deposit rate upon determination of an antidumping duty, *id.* at 39. Yet, both the binational panel and the administrative review process could provide, in substance, the same or similar relief that J.D. Irving seeks in the Court of International Trade, if it were to prevail. The fact that J.D. Irving may be unsuccessful if it pursues binational panel or administrative review is insufficient to demonstrate that remedies through those channels are manifestly inadequate.

> 1. The Binational Panel Could Provide J.D. Irving With
>    Meaningful Relief

Congress intended binational panel review to replace judicial review of antidumping determinations involving Canadian merchandise. S. Rep. 100-519, at 29-30. When directed by a binational panel, Commerce is required to "take action not inconsistent with the panel's decision." 19 U.S.C. § 1516a(g)(7)(A). Legislative history confirms that "[t]his provision mirrors the existing remand procedures of the CIT in antidumping and countervailing duty cases," thus reflecting Congress's intent that "binational panel decisions [will] be implemented in the same manner that court decisions are implemented under current law." S. Rep. 100-519 (1988), at 31. "Thus, the binational panel process replaces the

forum—not the remedies—available to the parties." *Bldg. Sys. de Mexico v. United States*, 476 F. Supp. 3d 1401, 1410 (Ct. Int'l Trade 2020).

Indeed, J.D. Irving cites no case in which a court determined that binational panel remedies are manifestly inadequate. Nor could it. Indeed, binational panels have considered allegations that Commerce imposed incorrect cash deposit rates without questioning whether the panel would have authority to order Commerce to replace an existing cash deposit rate. *See, e.g.*, *Stainless Steel Sheet and Strip in Coils from Mexico: Final Results of 2004/2005 Antidumping Review*, No. USA-MEX-2007-1904-1, 2011 WL 5024830 (NAFTA Binational Panel Aug. 17, 2011). In *Stainless Steel Sheet and Strip*, a Mexican company argued that Commerce was required to update its cash deposit rates in connection with recalculating an antidumping duty. *Id.* at *11-15. Although the panel ultimately determined that Commerce correctly decided that changing a cash deposit rate would have been unnecessary and futile in that matter, *id.* at *12-14, no party appears to have questioned the panel's authority to order Commerce to change the cash deposit rate if it found such relief appropriate.

J.D. Irving's arguments to the contrary lack merit. First, J.D. Irving argues that binational panel remedies are manifestly inadequate because "only the CIT has the power to remedy Commerce's unlawful assignment of the [11.59% cash deposit rate]" because binational panels allegedly cannot grant "equitable relief."

J.D. Irving Br. at 32. But J.D. Irving fails to show that a panel decision cannot have the same effect as an injunction when Commerce is bound by statute to take action not inconsistent with the decision.

Second, J.D. Irving cites two statutory provisions for the proposition that binational panels cannot provide equitable relief, 19 U.S.C. § 1516a(g)(5)(C), (6). But neither provision constrains a panel's authority to direct Commerce to reinstate the 1.57% cash deposit rate as of the AR 2 final results, and refund amounts paid above that rate. *See* J.D. Irving Br. at 34-35. Under 19 U.S.C. § 1516a(g)(5)(C), Commerce must continue to suspend liquidation of entries covered in a review that is subject to binational panel review. 19 U.S.C. § 1516a(g)(5)(C). Thus, 19 U.S.C. § 1516a(g)(5)(C) requires Commerce to suspend liquidation, but imposes no independent limitation on the panel's authority. Indeed, the legislative history behind 19 U.S.C. § 1516a(g)(5) confirms that the provision "parallels current practice with respect to liquidation of entries that are subject to judicial review under [19 U.S.C. § 1516a]." S. Rep. 100-519, at 31. It does not speak to binational panel authority to review Commerce's determination to adjust the cash deposit rate to match the AR 2 final results.

J.D. Irving also cites 19 U.S.C. § 1516a(g)(6), which provides that the Court of International Trade cannot enjoin liquidation of some or all entries of merchandise covered by a Commerce determination for which binational panel

review has been requested because such liquidation is already provided by statute. 19 U.S.C. § 1516a(g)(6). In any event, this provision clarifies limits on Court of International Trade power, not binational panel power, and imposes no independent constraint on the panel's authority to review the AR 2 final results and direct Commerce to take action, if warranted.

Third, J.D. Irving contends that binational panels cannot order declaratory relief, yet in the same breath, J.D. Irving concedes that 28 U.S.C. § 2643(c)(5) prohibits the Court of International Trade from awarding declaratory relief in cases "involving an antidumping or countervailing duty proceeding regarding a class or kind of merchandise of a free trade area country[.]" 28 U.S.C. § 2643(c)(5) (cited in J.D. Irving Br. at 44 n.5). Even so, J.D. Irving argues that the prohibition on declaratory relief does not apply because, when "[r]ead in the context of 19 U.S.C. § 1516a(g)(2)," there is another unwritten exception, this time when the case raises "issues that a USMCA panel cannot remedy". J.D. Irving Br. at 44. But the statute barring declaratory relief contains no exceptions and applies whether or not a binational panel review has been requested. Neither the statute itself nor its legislative history supports J.D. Irving's attempt to infer such an unwritten exception into the statute. And the case cited, *Canadian Lumber Trade Alliance v. United States*, 517 F.3d 1319, 1325 (Fed. Cir. 2008), determined that the plaintiffs' claims for declaratory and injunctive relief were moot; it did not address 28 U.S.C.

§ 2643(c)(5)'s declaratory relief prohibition. In any event, the point is that the Court of International Trade lacks authority to grant J.D. Irving declaratory relief, so J.D. Irving cannot show that binational panel review is manifestly inadequate on this basis.

Fourth, J.D. Irving argues that binational panels cannot order "retroactive" reinstatement of a cash deposit rate and refunds, J.D. Irving Br. at 32-33, but fails to substantiate that contention. Indeed, although panels may not "invalidate antidumping duties that had already been liquidated" (*i.e.*, retroactive relief), such limits do not apply when, as in this case, liquidation has been suspended. *See Canadian Wheat Bd. v. United States*, 641 F.3d 1344, 1350 (Fed. Cir. 2011). And although J.D. Irving argues that the trial court "recogniz[ed]" such a limitation on panel authority, the court merely recognized that J.D. Irving made such an argument, which it found "unpersuasive." Appx12. Indeed, the court explained that the panel could rule on the lawfulness of the cash deposit rate. Appx12.

Fifth, J.D. Irving argues that binational panel relief is manifestly inadequate because panels do not generate precedential decisions. But as the trial court explained, J.D. Irving's argument "proves too much[.]" Appx16. Under J.D. Irving's reasoning, "because a panel decision with respect to any legal issue lacks precedential effect, a panel decision as to any legal issue before it would be manifestly inadequate." Appx16. The trial court found that such a result would

contravene the federal policy against invoking Court of International Trade residual jurisdiction "for the purpose of circumventing the binational panel system[.]" Appx16 (quoting S. Rep. 100-509, at 35).

Thus, J.D. Irving fails to show that the relief available through binational panel review of the AR 2 final results is manifestly inadequate.

2.    J.D. Irving Could Also Obtain Meaningful Relief Through Administrative Review

On top of the remedies available from a binational panel, the Court of International Trade also determined that the administrative remedies available to J.D. Irving in AR 4 (2021), AR 5 (2022), and AR 6 (2023) are not manifestly inadequate. Appx13-16. Indeed, J.D. Irving previously presented its cash deposit arguments to Commerce in AR 2. Appx174. And neither Commerce nor J.D. Irving questioned Commerce's authority to provide the requested relief. Appx174-176. That Commerce ultimately found J.D. Irving's arguments to lack merit does not show that its administrative remedies are manifestly inadequate.

In explaining that administrative review could provide meaningful remedies, the Court of International Trade provided three independent rationales for its determination: (1) J.D. Irving may be made whole through the administrative review process; (2) the harms alleged by J.D. Irving do not demonstrate that available relief is manifestly inadequate; and (3) the existence of a preferred

remedy does not render alternatives manifestly inadequate.  Appx13-14.  Although J.D. Irving disagrees with the trial court's reasoning, it fails to show error.

a.     Financial Relief Is Available Through
<u>Administrative Review</u>

The administrative review process results in modifications to antidumping duty rates and, in turn, cash deposit rates.  For instance, J.D. Irving's cash deposit rate was adjusted consistent with the AR 2 final results, which is the subject of a binational panel review request.  Appx117, Appx120.  Given that the AR 2 final results were effective December 2, 2021, the 11.59% cash deposits were actually paid during the fourth (2021), fifth (2022), and sixth review periods (2023).  Administrative reviews for those periods are an additional avenue, on top of binational panel review, for J.D. Irving to "challenge . . . the cash deposit rate applied to entries made on or after December 2, 2021."  Appx13 (citing *Capella Sales & Servs. Ltd. v. United States*, 180 F. Supp. 3d 1293, 1303 (Ct. Int'l Trade 2016)).  In making this point, the trial court did not undermine any binational power authority to provide relief in connection with reviewing the AR 2 final results; rather, the trial court confirmed that the traditional way to recoup contested cash deposits is through administrative reviews for the periods in which J.D. Irving paid the contested 11.59% cash deposit rate—the fourth (2021), fifth (2022), and sixth (2023) periods.  Appx13.  Thus, J.D. Irving "'can be made whole' and receive its requested refund 'if [J.D. Irving's] claims are ultimately successful.'"

Appx13 (citing *Valeo N. Am., Inc. v. United States*, 277 F. Supp. 3d 1361, 1365 (Ct. Int'l Trade 2017)).  And given that J.D. Irving may obtain refunds with interest under 19 U.S.C. § 1673f(b)(2), the court correctly determined that relief available through administrative reviews is not manifestly inadequate.  Appx13.

Indeed, the review process could not be manifestly inadequate when the final results of AR 4 already resulted in a decreased cash deposit rate.  In the AR 4 final results, Commerce assessed a 6.20% antidumping duty rate for 2021 and a new cash deposit rate effective August 1, 2023.  *See* 88 Fed. Reg. at 50,107. Although higher than the 1.57% cash deposit rate paid between January 1 and December 1, 2021, the 6.20% cash deposit rate is lower than the 11.59% rate paid between December 2 and December 31, 2021.  And if the cash deposits paid exceed the final antidumping duties for AR 4, J.D. Irving will receive a refund with interest.  19 U.S.C. § 1673f(b)(2).  Further, if J.D. Irving disagrees with the AR 4 final results, it may appeal it to the Court of International Trade under Section 1581(c) or a binational panel, if one is requested.  Appx13.  J.D. Irving could obtain similar relief through its participation in AR 5, which could result in refunds if the assessed antidumping duty rate on 2022 entries is lower than 11.59%.

Although J.D. Irving argues that participating in reviews "perpetuates— rather than remedies—the [alleged] legal problem," and that J.D. Irving only requested a fourth review because it felt "compelled" to do so, J.D. Irving Br. at

41; *see also id.* at 36, J.D. Irving's participation was voluntary and provided relief from the 11.59% cash deposit rate.  *See* 88 Fed. Reg. at 50,107.

So, as the trial court properly determined, J.D. Irving's preference to bypass the administrative review process does not show that the process itself is manifestly inadequate, particularly when that process has already provided J.D. Irving with some financial relief and J.D. Irving still may obtain even more.

> b.  J.D. Irving's Harm Allegations Do Not Show That Administrative Reviews Are Manifestly Inadequate

Costs incurred in connection with administrative reviews and paying cash deposits do not render administrative reviews manifestly inadequate.  *See Sunpreme, Inc. v. United States*, 892 F.3d 1188, 1193 (Fed. Cir. 2018) ("[M]ere allegations of financial harm do not render a remedy established by Congress manifestly inadequate.") (quoting *Int'l Custom Prods.*, 467 F.3d at 1327).  Thus, "[n]either the burden of participating in the administrative proceeding nor the business uncertainty caused by such a proceeding is sufficient to constitute manifest inadequacy."  Appx13 (quoting *Valeo*, 277 F. Supp. 3d at 1365).  And "exposure to cash deposits is not a recognized harm that would render the available relief . . . manifestly inadequate" given that paying "cash deposits is an ordinary consequence of the statutory scheme[.]"  Appx14 (quoting *Valeo*, 277 F. Supp. 3d at 1365-66 n.6)).

Here, the Court of International Trade found that J.D. Irving's allegations about the hardships associated with administrative reviews and cash deposits do not show that administrative review is manifestly inadequate. Appx13-14. Although J.D. Irving contends that paying cash deposits constitutes its own "injury," it has not demonstrated that the payment of cash deposits renders relief obtained through the review process manifestly inadequate.

The cases cited by J.D. Irving, which address whether paying cash deposits constitutes an injury-in-fact for Article III standing purposes, do not show otherwise. *See* J.D. Irving Br. at 38-39 (citing cases).[7] None of these cases hold that incurring review costs or paying cash deposits pending resolution of binational panel review or administrative review renders administrative review manifestly inadequate. Indeed, even if the Court of International Trade possessed jurisdiction over the case, J.D. Irving would still need to pay cash deposits—now reduced to 6.20%—until it received an order stating otherwise. In any event, as the trial court

---

[7] *See Ontario Forest Indus. Ass'n v. United States*, 444 F. Supp. 2d 1309, 1323-24 (Ct. Int'l Trade 2006) (paying cash deposits constitutes injury-in-fact for Article III standing purposes); *Tembec, Inc. v. United States*, 441 F. Supp. 2d 1302, 1312 (Ct. Int'l Trade 2006) (same). The third case cited, *Elkem Metals Co. v. United States*, 196 F. Supp. 2d 1367, 1371 (Ct. Int'l Trade 2002), does not mention cash deposits at all. Rather, it determined that a currently-non-exporting Brazilian company had standing to challenge antidumping duties on goods it previously exported to the United States. *Id.*

noted, if J.D. Irving prevails on its cash deposit argument, it will receive a refund plus interest of any amounts in excess of the assessed antidumping duty rates.

> c. J.D. Irving's Preference For A Court Order Does Not Render Alternatives Manifestly Inadequate

The Court of International Trade's third rationale for finding that available remedies are not manifestly inadequate is that the availability of J.D. Irving's preferred or more desirable remedy in the trial court—*i.e.*, a court-issued injunction—does not render its alternatives manifestly inadequate. Appx14-15. Although the trial court acknowledged that another Court of International Trade judge enjoined Commerce from collecting cash deposits using an incorrectly-calculated rate in *Cooper Tire & Rubber Co.*, it explained that the availability of an injunction under *Cooper Tire's* unique facts does not mean that administrative remedies through the AR 4, AR 5, and AR 6 reviews are manifestly inadequate here. Appx15 (citing *Cooper Tire & Rubber Co. v. United States*, 217 F. Supp. 3d 1373, 1383-84 (Ct. Int'l Trade 2017)).[8] Importantly, if J.D. Irving disagrees with the determinations reached during those reviews, it may appeal to the Court of International Trade or a binational panel, if requested. Thus, although J.D. Irving

---

[8] We note that in *Cooper Tire & Rubber*, the Court of International Trade determined that it possessed jurisdiction over the case under Section 1581(c), even though the plaintiff purported to bring the suit as a challenge to cash deposit instructions. *Cooper Tire & Rubber*, 217 F. Supp. 3d at 1377.

contends that participation in "reviews would mean that Commerce's unlawful assignment of the [11.59%] Deposit Rate would escape judicial review entirely," J.D. Irving Br. at 32-38, its contention lacks merit given J.D. Irving's appeal rights.

Finally, J.D. Irving contends that participation in the administrative review process would perpetuate Commerce's allegedly unlawful "practice" of matching cash deposit rates to final antidumping duty rates established in completed reviews. *See* J.D. Irving Br. at 40. But J.D. Irving again fails to explain why the only forum that could consider such a challenge is the Court of International Trade. Indeed, the AR 2 final results already contain Commerce's rationale for adjusting the cash deposit rate to 11.59% in December 2021, which J.D. Irving may challenge before a binational panel. Appx175-176.

In sum, given the remedies available to J.D. Irving through the existing binational panel on top of those available through administrative reviews, J.D. Irving fails to show that its available remedies are manifestly inadequate. No basis exists to allow J.D. Irving to circumvent the binational panel.

## CONCLUSION

For these reasons, we respectfully request that this Court affirm the judgment below.

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

PATRICIA M. McCARTHY
Director

/s/ Tara K. Hogan for Claudia Burke
CLAUDIA BURKE
Deputy Director

OF COUNSEL

/s/ Eric E. Laufgraben

PAUL KEITH
Assistant Chief Counsel
Office of the Chief Counsel for
   Trade Enforcement & Compliance
U.S. Department of Commerce

ERIC E. LAUFGRABEN
Senior Trial Counsel
Commercial Litigation Branch
Civil Division
U.S. Department of Justice
P.O. Box 480
Ben Franklin Station
Washington, DC 20044
Telephone:  (202) 353-7995
Email:        Eric.E.Laufgraben@usdoj.gov

August 16, 2023

Attorneys for Defendant

<u>CERTIFICATE OF COMPLIANCE</u>

This motion complies with the type-volume limitation of Fed. R. App. P. 28.1(e)(2) because it contains 8,676 words excluding the items listed in Fed. R. App. P. 32(f) and Fed. Cir. R. 32(b)(2). Further, this brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it was prepared in a proportionally spaced typeface, Times New Roman, 14 point, using Microsoft Word.

/s/ Eric E. Laufgraben
Eric E. Laufgraben