2023-1652

---

## UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

---

J.D. IRVING, LTD.,

Plaintiff-Appellant

v.

UNITED STATES, DEPARTMENT OF COMMERCE,

Defendants-Appellees

---

Appeal from the United States Court of International Trade
in Case No. 1:21-CV-00641
Judge Timothy M. Reif

---

## REPLY BRIEF OF PLAINTIFF-APPELLANT
## J.D. IRVING, LIMITED

Walter J. Spak
Jay C. Campbell
WHITE & CASE LLP
701 Thirteenth  Street, NW
Washington, DC 20005
(202) 626-3600

September 6, 2023            Counsel to Plaintiff-Appellant J.D. Irving,
Limited

FORM 9. Certificate of Interest

Form 9 (p. 1)
March 2023

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## <u>CERTIFICATE OF INTEREST</u>

**Case Number** 2023-1652

**Short Case Caption** J.D. Irving, Ltd. v. US

**Filing Party/Entity** Appellant J.D. Irving, Limited

---

**Instructions:**

1. Complete each section of the form and select none or N/A if appropriate.

2. Please enter only one item per box; attach additional pages as needed, and check the box to indicate such pages are attached.

3. In answering Sections 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance.

4. Please do not duplicate entries within Section 5.

5. Counsel must file an amended Certificate of Interest within seven days after any information on this form changes.  Fed. Cir. R. 47.4(c).

---

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: 09/06/2023

Signature: /s/ Jay C. Campbell

Name: Jay C. Campbell

**FORM 9. Certificate of Interest**

| **1. Represented Entities.** Fed. Cir. R. 47.4(a)(1). | **2. Real Party in Interest.** Fed. Cir. R. 47.4(a)(2). | **3. Parent Corporations and Stockholders.** Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities. ☐ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities. ☐ None/Not Applicable |
| J.D. Irving, Limited | N/A | J.K. Irving, Limited |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |

☐   Additional pages attached

**4. Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

☐   None/Not Applicable          ☐   Additional pages attached

| | | |
|---|---|---|
| White & Case LLP | | |
| Cristina M. Cornejo | | |
| | | |

**5. Related Cases.** Other than the originating case(s) for this case, are there related or prior cases that meet the criteria under Fed. Cir. R. 47.5(a)?

☑   Yes (file separate notice; see below)     ☐   No     ☐   N/A (amicus/movant)

If yes, concurrently file a separate Notice of Related Case Information that complies with Fed. Cir. R. 47.5(b). **Please do not duplicate information.** This separate Notice must only be filed with the first Certificate of Interest or, subsequently, if information changes during the pendency of the appeal. Fed. Cir. R. 47.5(b).

**6. Organizational Victims and Bankruptcy Cases**. Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

☑   None/Not Applicable          ☐   Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |

TABLE OF CONTENTS

<u>Page</u>

INTRODUCTION ...................................................................................... 1

ARGUMENT ............................................................................................ 3

I.    BINATIONAL PANEL REVIEW OF THE *AR2 FINAL RESULTS* DOES NOT DIVEST THE CIT OF JURISDICTION TO HEAR J.D. IRVING'S APPEAL OF CASH DEPOSIT INSTRUCTIONS ..................... 3

    A.    J.D. Irving Has Appealed Agency Action That Is Not Reviewable by a USMCA Panel .......................................................... 3

    B.    Even If the "True Nature" Test Were Relevant, J.D. Irving's Action Contests *Cash Deposit Instructions*, Not the *AR2 Final Results* ................................................................................................. 5

        1.    The Government Disregards the Substance of J.D. Irving's Action Based on an Irrelevant Consideration .............. 6

        2.    The Government Fails To Support the Test Applied by the Trade Court Below for Determining the True Nature of J.D. Irving's Action .............................................................. 8

            a.    The Government misreads *Am. Signature* and *Consol. Bearings*, which support the conclusion that J.D. Irving's action challenges cash deposit instructions ..................................................................... 9

            b.    The Government misreads *Wangxian Am.* and *Mittal Canada*, neither of which undermines J.D. Irving's challenge to cash deposit instructions ............... 11

        3.    Even If the Trade Court's "True Nature" Test Were Valid, J.D. Irving's Action Meets It ......................................... 13

    C.    Section 1581(i)(2)(B) Must Be Read in Accord with the Court's 1581(i) Jurisprudence, Which Finds § 1581(i) Jurisdiction When the Alternative Remedy Would Be Manifestly Inadequate ......................................................................................... 14

i

II.    THE CIT HAS JURISDICTION TO HEAR J.D. IRVING'S LEGAL
       CLAIM UNDER THE GENERAL § 1581(i) STANDARD ........................17

       A.    As Established, the "True Nature" of J.D. Irving's Action
             Contests Commerce's *Cash Deposit Instructions*...............................17

       B.    Any Proceeding Outside the CIT Would Be Manifestly
             Inadequate to Remedy J.D. Irving's Claim .........................................18

             1.    A USMCA binational panel cannot provide adequate
                   relief ...................................................................................18

                   a.    USMCA panels lack the power to provide
                         necessary retroactive relief .............................................19

                   b.    USMCA panels lack the power to provide
                         necessary prospective relief............................................23

             2.    Commerce administrative reviews cannot provide
                   adequate relief.........................................................................25

CONCLUSION AND STATEMENT OF RELIEF SOUGHT ..............................30

ii

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Am. Signature, Inc. v. United States,*
2007 U.S. App. LEXIS 27709 (Fed. Cir. 2007) ..................................7, 9, 10, 11

*Bhullar v. United States,*
259 F. Supp. 2d 1332 (Ct. Int'l Trade 2003) ................................................15, 16

*Bhullar v. United States,*
93 Fed. Appx. 218 (Fed. Cir. 2004)..............................................................14, 15

*Bldg. Sys. de Mexico v. United States,*
476 F. Supp. 3d 1401 (Ct. Int'l Trade 2020) ................................................20, 21

*Canadian Lumber Trade Alliance v. United States,*
517 F.3d 1319(Fed. Cir. 2008) ...........................................................................24

*Consol. Bearings Co. v. United States,*
348 F.3d 997 (Fed. Cir. 2003) ........................................................................9, 10

*Cooper Tire & Rubber Co. v. United States,*
217 F. Supp. 3d 1373 (Ct. Int'l Trade 2017) .......................................................22

*Cooper Tire & Rubber Co. v. United States,*
No. 15-00251, 2017 Ct. Intl. Trade LEXIS 131 (Sept. 25, 2017) ......................22

*Dofasco Inc. v. United States,*
326 F. Supp. 2d 1340 (Ct. Int'l Trade 2004),
*aff'd* 390 F.3d 1370 (Fed. Cir. 2004)............................................................16, 29

*Hartford Fire Ins. Co. v. United States,*
544 F.3d 1289 (Fed. Cir. 2008) ...............................................................4, 17, 18

*Intercontinental Chems., LLC v. United States,*
483 F. Supp. 3d 1232 (Ct. Int'l Trade 2020) .......................................................16

*Miller & Co. v. United States,*
824 F.2d 961 (Fed. Cir. 1987) ..................................................................5, 14, 17

AMERICAS 124963226

*Mittal Canada Inc. v. United States*,
  414 F. Supp. 2d 1347 (Ct. Int'l Trade 2006) .............................................9, 11, 12

*Parkdale Int'l, Ltd. v. United States*,
  491 F. Supp. 2d 1262 (Ct. Int'l Trade 2007) ........................................6, 7, 11, 29

*Wangxian Am. Corp. v. United States*,
  399 F. Supp. 3d 1323 (Ct. Int'l Trade 2019) ..................................................9, 11

## STATUTES AND REGULATIONS

19 U.S.C. § 1516(a)(g)(5)(C) .......................................................................20

19 U.S.C. § 1516(a)(g)(6) ............................................................................20

19 U.S.C. § 1516a(a)(1)(B) .............................................................................4

19 U.S.C. § 1516a(a)(2)(B) ....................................................................4, 5, 18

19 U.S.C. § 1516a(b)(3) ...............................................................................25

19 U.S.C. § 1516a(g)(1) .............................................................................4, 5

19 U.S.C. § 1516a(g)(1) .................................................................................4

19 U.S.C. § 1516a(g)(2) .......................................................................3, 5, 14

19 U.S.C. § 1516a(g)(5)(C) .........................................................................20

19 U.S.C. § 1516a(g)(7)(A) .........................................................................19

19 U.S.C. § 1675 ...........................................................................................6

19 U.S.C. § 1675(a) ................................................................................7, 23

19 U.S.C. § 1675(a)(2)(C) ...........................................................................13

28 U.S.C. § 1581 ..................................................................................passim

28 U.S.C. § 1581(i) ..............................................................................passim

28 U.S.C. § 1581(i)(1)(D) ...............................................................................1

28 U.S.C. § 1581(i)(2) ................................................................................15

iv

28 U.S.C. § 1581(i)(2)(B) ..................................................................3, 5, 14

28 U.S.C. § 1581(c) ..................................................................7, 9, 11, 16

28 U.S.C. § 1585 ..................................................................................19

28 U.S.C. § 2643(c)(1) ..........................................................................19

28 U.S.C. § 2643(c)(5) ......................................................................23, 24

19 C.F.R. § 351.212(c)(1) ....................................................................9, 13

## ADMINISTRATIVE DETERMINATIONS

*Stainless Steel Sheet and Strip in Coils from Mexico,*
    No. USA-MEX-2007-1904-1, 2011 FTAPD LEXIS 2 (Aug. 17,
    2011) ..............................................................................................21

## LEGISLATIVE MATERIALS

H.R. Rep. No. 96-1235 (1980) ................................................................5

H. Rep. No. 103-361 (1st Sess. 1993) ..................................................25

S. Rep. 100-519 (1988) ..........................................................................20

## MISCELLANEOUS

OXFORD ENGLISH DICTIONARY (2d ed. 1989) .........................................18

AMERICAS 124963226

## **INTRODUCTION**

Plaintiff-Appellant J.D. Irving, Limited ("Appellant," "J.D. Irving," or "JDI") contests a general policy of the U.S. Department of Commerce ("Commerce") that unlawfully prioritizes outdated antidumping ("AD") rates calculated in completed administrative reviews over current AD rates determined by operation of law, contrary to the statute and Congressional intent. Commerce implements its illegal policy through the issuance of AD cash deposit instructions to U.S. Customs and Border Protection ("CBP"). Here, JDI challenges the AD cash deposit instructions issued to implement the final results of the AD administrative review for the 2019 period in *Softwood Lumber from Canada* ("*Cash Deposit Instructions*"). Because JDI's action concerns Commerce's "administration and enforcement" of the final results of the 2019 review ("*AR2 Final Results*"), the U.S. Court of International Trade ("CIT") has jurisdiction to hear the action under 28 U.S.C. § 1581(i)(1)(D).

The Government counters that the CIT lacks § 1581(i) because the "true nature" of JDI's action is a challenge to the *AR2 Final Results* and other available remedies would not be "manifestly inadequate," but is wrong on both counts.

In the Government's view, the action concerns the *AR2 Final Results* merely because JDI contested Commerce's policy in a case brief submitted during the 2019 AD review ("*AR2 Review*"). The Government's reliance on this fact ignores

the true nature of JDI's claim, which bears little relation to the *AR2 Final Results* themselves – having nothing to do with the import entries covered by the *AR2 Review*, Commerce's calculations of any dumping rates in that review, or virtually the entire AR2 administrative record. Rather, Appellant's action contests a general Commerce policy that would not have affected JDI at all but for an event that occurred outside the *AR2 Review*: the establishment of JDI's more recent AD rate for the 2020 review period ("AR3") by operation of law. Because Commerce applied its unlawful policy to JDI through the issuance of *Cash Deposit Instructions*, the true nature of the action contests those instructions.

Regarding adequacy of remedies, the Government misconstrues Congress's delegation of remand authority to USMCA binational panels as the grant of injunctive power, and claims that JDI can obtain adequate relief by pursuing refunds of AD cash deposits through participation in administrative reviews. Like the CIT below, the Government fails to appreciate the nature of JDI's legal claim. This is not the typical case where a respondent seeks review of its entries because the AD deposit rate applicable upon entry was higher its actual dumping rate during the period of review. Rather, Appellant's claim is that Commerce's assignment of the AR2 cash deposit rate to JDI was unlawful in and of itself, because JDI already had a cash deposit rate for a more recent period, AR3. Participation in reviews does nothing to address Commerce's unlawful policy,

2

which – absent the injunctive and declaratory relief that JDI seeks – Commerce would repeat on end, compelling JDI to participate in unnecessary administrative reviews, contrary to the statute and Congressional intent. Participation in administrative reviews perpetuates – rather than remedies – the very legal issue for which Appellant seeks relief.

## **ARGUMENT**

## I. BINATIONAL PANEL REVIEW OF THE *AR2 FINAL RESULTS* DOES NOT DIVEST THE CIT OF JURISDICTION TO HEAR J.D. IRVING'S APPEAL OF CASH DEPOSIT INSTRUCTIONS

Attempting to bypass the court's general standard for invoking § 1581(i) jurisdiction, the Government asserts that, because the *AR2 Final Results* are before a USMCA panel, the CIT lacks jurisdiction by virtue of 28 U.S.C. § 1581(i)(2)(B) and 19 U.S.C. § 1516a(g)(2). The Government is wrong. Neither provision deprives the CIT of § 1581(i) jurisdiction because JDI contests Commerce's *Cash Deposit Instructions* – not the *AR2 Final Results*. Moreover, the CIT would retain jurisdiction under § 1581(i) to review the *Cash Deposit Instructions* under any circumstances, because USMCA panel review would be "manifestly inadequate" to remedy JDI's legal claim.

### A. J.D. Irving Has Appealed Agency Action That Is Not Reviewable by a USMCA Panel

As explained in JDI's opening brief, neither 28 U.S.C. § 1581(i)(2)(B) nor 19 U.S.C. § 1516a(g)(2) deprives the CIT of jurisdiction to entertain JDI's action

under § 1581(i).  *See* Appellant's Br. at 45-46.  Whereas these provisions bar the trade court from exercising jurisdiction over an antidumping "determination" that is reviewable by a USMCA panel, *see id.*, JDI has not appealed any such determination.  Rather, JDI contests Commerce's *Cash Deposit Instructions*, which are not an agency determination reviewable by a USMCA panel.  *See* 19 U.S.C. § 1516a(a)(2)(B) & 1516a(g)(1) (listing the agency determinations reviewable by a binational panel without reference to cash deposit instructions).  Consequently, Sections 1581(i)(2)(B) and 1516a(g)(2) are not relevant to the Court's analysis of whether the trade court has jurisdiction under § 1581(i) to hear JDI's challenge to *Cash Deposit Instructions*.

Notwithstanding, the Government wrongly contends that Sections 1581(i)(2)(B) and 1516a(g)(2) bar the CIT from exercising jurisdiction because the "true nature" of JDI's appeal is a challenge to the *AR2 Final Results*.  *See* Gov. Br. at 19-20.  The "true nature" test, however, arises in the context of the court's analysis of whether jurisdiction "is or could have been available" under another subsection of 28 U.S.C. § 1581.  *See*, *e.g.*, *Hartford Fire Ins. Co. v. United States*, 544 F.3d 1289, 1293 (Fed. Cir. 2008).  The "true nature" test does not speak to the agency determinations reviewable by USMCA panels that are clearly enumerated under 19 U.S.C. § 1516a(a)(1)(B), (2)(B), and (g)(1).   Nor did the Government

4

identify a single case in which a court relied on the "true nature" test in the context of applying Section 1581(i)(2)(B) or 1516a(g)(2).

In fact, in this case the trade court did not hold that it lacked jurisdiction of JDI's action based on Section 1581(i)(2)(B) or 1516a(g)(2). *See* Appx9-16. Instead, the court (wrongly) found that it lacked jurisdiction based on the general test articulated by the court in *Miller & Co. v. United States*, 824 F.2d 961, 963 (Fed. Cir. 1987) (*i.e.*, "Section 1581(i) jurisdiction may not be invoked when jurisdiction under another subsection of § 1581 *is or could have been available*, unless the remedy provided under that other subsection would be manifestly inadequate."). *See id.*

For these reasons, Sections 1581(i)(2)(B) and 1516a(g)(2) do not apply, and the Court's consideration of these provisions should end here.

**B.     Even If the "True Nature" Test Were Relevant, J.D. Irving's Action Contests *Cash Deposit Instructions*, Not the *AR2 Final Results***

Even if the "true nature" test were applicable in the context of 28 U.S.C. § 1581(i)(2)(B) or 19 U.S.C. § 1516a(g)(2), the true nature of JDI's action is a challenge to Commerce's *Cash Deposit Instructions* – not to a determination reviewable by a USMCA panel under 19 U.S.C. § 1516a(a)(2)(B) and 1516a(g)(1). *See* H.R. Rep. No. 96-1235, at 48 (1980) ("Subsection (i), and in particular paragraph (4), makes it clear that the court is not prohibited from entertaining a

5

civil action relating to an antidumping or countervailing duty proceeding so long as the action does not involve a challenge to a determination specified in section 516A of the Tariff Act of 1930.").  In arguing otherwise, the Government glosses over the nature of JDI's legal claim and ignores or misconstrues pertinent case law.

### 1.  The Government Disregards the Substance of J.D. Irving's Action Based on an Irrelevant Consideration

The Government's "true nature" argument boils down to a triviality.  In the Government's view, the true nature of Appellant's action concerns the *AR2 Final Results* simply because JDI raised the cash deposit issue in a case brief submitted in the *AR2 Review*.  Merely briefing an issue, however, does not speak to the true nature of the issue raised.  The heart of JDI's action is a challenge to an unlawful policy that Commerce implements through the issuance of cash deposit instructions, regardless of when or how the issue was raised.

In *Parkdale Int'l*, the CIT found § 1581(i) jurisdiction because "{a}t the heart of {that} case {was} a claim challenging a general administrative policy setting general liquidation instructions, not a 19 U.S.C. § 1675 determination upon review of entries." *Parkdale Int'l, Ltd. v. United States*, 491 F. Supp. 2d 1262, 1269 (Ct. Int'l Trade 2007).[1]  Similarly here, JDI contests a general Commerce policy pertaining to the assignment of AD cash deposit rates.  Specifically, JDI

---

[1] Notably, the Government ignored *Parkdale Int'l*, even though J.D. Irving had highlighted the case in its opening brief.  *See generally* Gov. Br.; *see also* Appellant's Br. at 23, 29-30, 47.

AMERICAS 124963226

contests Commerce's general (and unlawful) practice of prioritizing (1) an AD cash deposit rate calculated in the most recently completed administrative review (for 2019) over (2) an AD cash deposit rate established by operation of law for a subsequent period of review (for 2020). Because Commerce implements its unlawful practice through the issuance of cash deposit instructions, the true nature of JDI's appeal is a challenge to such instructions.

Furthermore, the true nature of JDI's claim remains a challenge to *Cash Deposit Instructions* even though JDI raised the issue in the *AR2 Review*. *See Am. Signature, Inc. v. United States*, 2007 U.S. App. LEXIS 27709, *5-6 (Fed. Cir. 2007) ("The mere fact that Commerce addressed the implementation of antidumping rates in its final determination does not make the implementation itself a reviewable determination under § 1516a."); *see also Parkdale Int'l*, 491 F. Supp. 2d at 1266 ("{T}he court concludes that, even if plaintiffs had filed a case brief contesting application of the *Reseller Policy*, Commerce's determination regarding the issue would not have constituted a 19 U.S.C. § 1675(a) determination which qualifies for jurisdiction under 28 U.S.C. § 1581(c)."). JDI's claim does not concern imports covered by the *AR2 Review*; nor does JDI contest Commerce's calculation of either the assessment rate or the cash deposit rate determined for non-selected companies in the *AR2 Review* (11.59%). Rather, JDI contests

AMERICAS 124963226

Commerce's implementation of an unlawful practice through the issuance of cash deposit instructions.

Moreover, while the Government emphasizes that "the same administrative record supports the AR 2 final results and the cash deposit instructions{,}" Gov. Br. at 21, JDI's legal claim requires little reference to the AR2 administrative record. This is evident from JDI's Complaint, to which the company attached all administrative documents relevant to its appeal. *See* Appx33-177. Conspicuously absent are any of the mandatory respondents' questionnaire responses or any of Commerce's dumping rate calculations in the review. *See id.* Notably included are documents ***outside*** the AR2 administrative record, such as Commerce's notice of initiation of the *AR3 Review* (covering import entries in 2020) and liquidation instructions for JDI's year-2020 entries. *See* Appx125-165. The administrative record underlying JDI's appeal further demonstrates that the true nature of the action challenges cash deposit instructions – not the *AR2 Final Results* themselves.

### 2.    The Government Fails To Support the Test Applied by the Trade Court Below for Determining the True Nature of J.D. Irving's Action

In arguing that the "true nature" of JDI's action is a challenge to the *AR2 Final Results*, the Government reiterates the unsatisfactory test applied by the trade court below: that the true nature of the appeal concerns Commerce's instructions to CBP only when those "'instructions are *inconsistent with or contain a legal*

AMERICAS 124963226

*error that is distinct from* Commerce's determination.'"  Gov. Br. at 21 (quoting Appx10).  In attempting to defend the trade court's test, however, the Government misreads decisions of this court (*Am. Signature* and *Consol. Bearings*) and the CIT (*Wangxian Am.* and *Mittal Canada*).

> a.    **The Government misreads *Am. Signature* and *Consol. Bearings*, which support the conclusion that J.D. Irving's action challenges cash deposit instructions**

The Government claims that this court's decisions in *Am. Signature* and *Consol. Bearings* "support the rule articulated by the trial court."  Gov. Br. at 23. The Government is mistaken.  Rather, as previously explained, both cases support JDI's argument that the true nature of its legal claim contests the *Cash Deposit Instructions*.  *See* Appellant's Br. at 25-28.

In *Am. Signature*, Commerce's liquidation instructions were not inconsistent with its final determination.  Rather, in the final determination Commerce had rejected the very argument the plaintiff importer wished to raise on appeal – that the AD cash deposits (and, hence, the automatic liquidations made in accordance with 19 C.F.R. § 351.212(c)(1)) should reflect amended preliminary and final rates.  *See Am. Signature*, LEXIS 27709 at **2-4.  Despite this, and although the importer could have appealed Commerce's final determination under 28 U.S.C. § 1581(c), the *Am. Signature* Court held that the true nature of the importer's claim challenged Commerce's liquidation instructions, which the CIT had jurisdiction to

review under § 1581(i).  *See id.* at **5-6.  Similarly here, although the *AR2 Final Results* address the legal argument JDI seeks to raise on appeal, the true nature of JDI's action remains a challenge to *Cash Deposit Instructions*.

Likewise, in *Consol. Bearings*, Commerce's liquidation instructions were not inconsistent with its final results of review.  Rather, because the importer had not participated in the review, it was not subject to the final results of that review at all.  *See Consol. Bearings Co. v. United States*, 348 F.3d 997, 1001 (Fed. Cir. 2003).  Notwithstanding, the *Consol. Bearings* Court held that the plaintiff importer's action contested Commerce's liquidation instructions – "a challenge to the 'administration and enforcement' of th{e} final results," as opposed to the final results themselves – such that the CIT had jurisdiction under § 1581(i).  *Id.* at 1002.  Similarly, JDI challenges *Cash Deposit Instructions*, which pertain to the "administration and enforcement" of the *AR2 Final Results*, not the final results themselves.

As recognized by the Government, the only difference between JDI's case and the jurisdictional issues presented in *Am. Signature* and *Consol. Bearings* is that, unlike the plaintiffs in those cases, JDI raised its legal claim in the *AR2 Review* and Commerce responded in the final results.  *See* Gov. Br. at 24-25.  By the Government's logic, had JDI remained silent and not contested Commerce's unlawful practice during the *AR2 Review*, it could invoke the CIT's § 1581(i)

AMERICAS 124963226

jurisdiction to challenge the *Cash Deposit Instructions* without issue. This court's § 1581(i) jurisprudence, however, cannot possibly support that outcome. A litigant, such as JDI, that did everything it could to exhaust administrative remedies and be positioned to invoke the CIT's jurisdiction under § 1581(c) cannot be worse off than a litigant that declined to do so. Rather, the court looks to the "true nature" of the action, regardless of whether the agency addressed the legal issue raised during an administrative proceeding. *See Am. Signature,* LEXIS 27709 at *5-6; *Parkdale Int'l*, 491 F. Supp. 2d at 1266.

> **b.**    **The Government misreads *Wangxian Am.* and *Mittal Canada*, neither of which undermines J.D. Irving's challenge to cash deposit instructions**

The Government also attempts to justify the trade court's reliance on *Wangxian Am.* and *Mittal Canada*, which JDI had distinguished. *See* Appellant's Br. at 30-31. According to the Government, the CIT's decisions in those cases do "not turn on" the factual distinctions identified by JDI. Gov. Br. at 22. To the contrary, neither case supports the test relied upon by the trade court to dismiss JDI's appeal of the *Cash Deposit Instructions* – that those instructions must be inconsistent with or contain a legal error that is distinct from Commerce's final determination.

In *Wangxian Am.*, the plaintiff challenged a Commerce memorandum addressed to CBP that had zero effect on the parties' legal rights. *See Wangxian*

AMERICAS 124963226

*Am. Corp. v. United States*, 399 F. Supp. 3d 1323, 1329, 1331, 1334 (Ct. Int'l Trade 2019). Consequently, the plaintiff had failed to challenge any action or decision independent from Commerce's final determination. In contrast, JDI has contested *Cash Deposit Instructions*, the very action that unlawfully replaced JDI's AR3 AD deposit rate with an AR2 deposit rate, contrary to the statue and Congressional intent.

Meanwhile, in *Mittal Canada*, the CIT held that it had § 1581(i) jurisdiction to entertain the plaintiff's challenge to liquidation instructions even though those instructions were ***consistent*** with Commerce's final determination in a changed circumstances review. *See Mittal Canada Inc. v. United States*, 414 F. Supp. 2d 1347, 1352-53 (Ct. Int'l Trade 2006). That is, Commerce's automatic liquidation instructions were consistent with its decision in the review that, for AD deposit purposes, Mittal Canada, the plaintiff, was to be treated as the successor-in-interest to Ispat Sidbec as of July 8, 2005 (not retroactively, the result plaintiff sought). *See id.* at 1349-50. Nevertheless, the court found that jurisdiction was established under § 1581(i) because the plaintiff's claim – that Commerce's liquidation instructions were legally defective – concerned the "administration and enforcement" of those final results. *See id.* at 1352-53. *Mittal Canada* ***supports*** JDI's invocation of § 1581(i) jurisdiction. Like the plaintiff in *Mittal Canada*, the true nature of JDI's claim is that Commerce's instructions to CBP are legally

AMERICAS 124963226

defective, even though Commerce's *Cash Deposit Instructions* are consistent with its final determination in the *AR2 Review*.

### 3. Even If the Trade Court's "True Nature" Test Were Valid, J.D. Irving's Action Meets It

Even if the trade court's test – that the true nature of an appeal concerns Commerce's instructions to CBP only when those "instructions are *inconsistent with or contain a legal error that is distinct from* Commerce's determination{,}" Appx10 – were valid, JDI's action surely meets it. In the *AR2 Review*, Commerce assigned JDI the AD deposit rate determined in that review because JDI was subject to the review. JDI raises a legal claim that is broader than that determination. JDI asserts that Commerce violated the statute and Congressional intent when it instructed CBP to assign JDI the AR2 AD deposit rate, because JDI already had an AD deposit rate established for the more recent AR3 period. Appellant's legal claim concerns the AR3 dumping rate Commerce had determined for JDI by operation of law in accordance with 19 U.S.C. § 1675(a)(2)(C) and 19 C.F.R. § 351.212(c)(1) and, thus, looks beyond the *AR2 Final Results*. Accordingly, JDI has raised a legal claim that is distinct from the *AR2 Final Results*. The true nature of JDI's legal claim is a challenge to *Cash Deposit Instructions*, which implement the *AR2 Final Results* and violate the AR3 dumping determination made for JDI by operation of law.

AMERICAS 124963226

**C.    Section 1581(i)(2)(B) Must Be Read in Accord with the Court's 1581(i) Jurisprudence, Which Finds § 1581(i) Jurisdiction When the Alternative Remedy Would Be Manifestly Inadequate**

The CIT retains § 1581(i) jurisdiction to entertain JDI's appeal of *Cash Deposit Instructions* even if the "true nature" of JDI's appeal were deemed a challenge to the *AR2 Final Results*. As argued in Appellant's opening brief, 28 U.S.C. § 1581(i) and 19 U.S.C. § 1516a(g)(2) must be interpreted in accord with this court's § 1581(i) jurisprudence, which holds that "Section 1581(i) jurisdiction may not be invoked when jurisdiction under another subsection of § 1581 is or could have been available, ***unless*** the remedy provided under that other subsection would be manifestly inadequate." Appellant's Br. at 46-47 (quoting *Miller*, 824 F.2d at 963) (emphasis added). Here, as demonstrated below in **Section II.B**, USMCA panel review of the *AR2 Final Results* would fail to provide any meaningful relief for JDI's legal claim. In response, the Government continues to overlook or misread relevant case law.

The Government contends that the "manifestly inadequate" rule promulgated by the *Miller* Court does not apply to determinations reviewable by USMCA panels, because neither 28 U.S.C. § 1581(i) nor 19 U.S.C. § 1516a(g) provides for such exception to the general rule foreclosing CIT review of determinations before USMCA panels. *See* Gov. Br. at 25-28. As support, the Government cites *Bhullar v. United States*, 93 Fed. Appx. 218 (Fed. Cir. 2004),

AMERICAS 124963226

Gov. Br. at 27, but that case is inapposite.  In *Bhullar*, the appellant sought CIT review of the same agency final determinations for which NAFTA binational panel review had been requested.  *See Bhullar*, 93 Fed. Appx. at 219-20; *Bhullar v. United States*, 259 F. Supp. 2d 1332, 1336 (Ct. Int'l Trade 2003) (identifying the contested final antidumping and countervailing duty determinations). Consequently, by the plain terms of Sections 1581(i) and 1516a(g)(2), the CIT lacked jurisdiction to hear the action.  Here, in contrast, JDI has appealed *Cash Deposit Instructions* – not the *AR2 Final Results* pending review by the USMCA binational panel.  Accordingly, even if jurisdiction under subsection (c) of § 1581 were available to address JDI's legal claim (but for USMCA panel review), the CIT retains jurisdiction under § 1581(i) to entertain JDI's challenge to the *Cash Deposit Instructions*, because USMCA panel review would fail to provide an adequate remedy (as discussed below in **Section II.B**).

Moreover, the Government ignores pertinent case law.  The full text of 28 U.S.C. § 1581(i)(2) states:

> This subsection shall not confer jurisdiction over an antidumping or countervailing duty determination which is reviewable by-
>
> > (A) the Court of International Trade under section 516A(a) of the Tariff Act of 1930 (19 U.S.C. 1516a(a)); or
> >
> > (B) a binational panel under section 516A(g) of the Tariff Act of 1930 (19 U.S.C. 1516a(g)).

AMERICAS 124963226

Notwithstanding this provision, the courts still examine whether CIT review of an antidumping or countervailing duty determination under 19 U.S.C. § 1516a(a) – for which § 1581(c) jurisdiction is available – would be manifestly inadequate in the context of addressing § 1581(i) jurisdiction. *See*, *e.g.*, *Dofasco Inc. v. United States*, 326 F. Supp. 2d 1340, 1346 (Ct. Int'l Trade 2004), *aff'd* 390 F.3d 1370 (Fed. Cir. 2004); *Intercontinental Chems., LLC v. United States*, 483 F. Supp. 3d 1232, 1240-41 (Ct. Int'l Trade 2020) ("If plaintiff could have invoked 28 U.S.C. § 1581(c) but the remedy under this provision would have been manifestly inadequate, then jurisdiction under § 1581(i) would still be available."). By extension, the CIT also has jurisdiction under § 1581(i) when review by a USMCA panel under 19 U.S.C. § 1516a(g) would be manifestly inadequate.

Even in *Bhullar*, the case cited by the Government, the CIT considered whether any remedy available under another subsection of § 1581 would be manifestly inadequate, but found this standard was unmet. *See Bhullar*, 259 F. Supp. 2d at 1342, *aff'd* 93 Fed. Appx. at 220. The trade court below also considered whether review of JDI's legal claim by a USMCA panel would be manifestly inadequate, *see* Appx11-16 – yet the Government did not express disagreement with this aspect of the CIT's analysis.

Because USMCA panel review of JDI's legal claim would be manifestly inadequate to provide relief, the trade court retains § 1581(i) jurisdiction to

AMERICAS 124963226

entertain JDI's appeal of *Cash Deposit Instructions* even if the "true nature" of JDI's appeal were deemed a challenge to the *AR2 Final Results*.

## II.    THE CIT HAS JURISDICTION TO HEAR J.D. IRVING'S LEGAL CLAIM UNDER THE GENERAL § 1581(i) STANDARD

"Section 1581(i) jurisdiction may not be invoked when jurisdiction under another subsection of § 1581 *is or could have been available*, unless the remedy provided under that subsection would be manifestly inadequate." *Miller*, 824 F.2d at 963. Here, § 1581(i) jurisdiction may be invoked because (1) the "true nature" of JDI's action is a challenge to cash deposit instructions (which do not constitute a determination reviewable by a USMCA panel) and (2) neither USMCA panel review nor administrative reviews would provide meaningful relief for JDI's legal claim. In arguing that the CIT lacks § 1581(i) jurisdiction, the Government misinterprets the statute, ignores or misreads relevant case law, and mischaracterizes the trade court's decision below.

### A.    As Established, the "True Nature" of J.D. Irving's Action Contests Commerce's *Cash Deposit Instructions*

In determining whether jurisdiction "is or could have been available" under another subsection of 28 U.S.C. § 1581, the court "look{s} to the true nature of the action . . . ." *Hartford Fire*, 544 F.3d at 1293. Here, as established above in **Section I.B**, the true nature of JDI's action is a challenge to Commerce's *Cash Deposit Instructions*. Because cash deposit instructions are not reviewable under

19 U.S.C. § 1516a(a)(2)(B), jurisdiction under subsection 1581(c) is unavailable. Consequently, the CIT can entertain JDI's appeal of the *Cash Deposit Instructions* under § 1581(i).

### B. Any Proceeding Outside the CIT Would Be Manifestly Inadequate to Remedy J.D. Irving's Claim

The Government wrongly asserts that "both the binational panel and the administrative review process could provide, in substance, the same or similar relief that JDI seeks in the Court of International Trade if it were to prevail." Gov. Br. 30. To the contrary, neither USMCA panel review nor Commerce administrative reviews would provide any relief at all for JDI's legal claim, which contests Commerce's unlawful practice of prioritizing outdated AD rates determined in administrative reviews over current AD rates determined by operation of law. *See Hartford Fire*, 544 F.2d at 1294 (stating that a remedy is manifestly inadequate if it would be "an exercise in *futility*, or 'incapable of producing any result; failing utterly of the desired end through intrinsic defect; useless, ineffectual vain.'") (quoting OXFORD ENGLISH DICTIONARY (2d ed. 1989)).

### 1. A USMCA binational panel cannot provide adequate relief

Adequate relief for JDI's legal claim would include (1) an injunctive order directing Commerce to reinstate JDI's lawful AD cash deposit rate retroactively and (2) a binding order preventing Commerce from continuing to misinterpret the statute in a manner that compels JDI to request AD administrative reviews that

AMERICAS 124963226

would otherwise be unnecessary.  The CIT has the statutory authority to provide
such retroactive and prospective relief; USMCA panels do not.  The Government
fails to show otherwise.

### a.    USMCA panels lack the power to provide necessary retroactive relief

In arguing that JDI "fails to substantiate" its contention that "binational
panels cannot order 'retroactive' reinstatement of a cash deposit rate and
refunds{,}" the Government ignores or misinterprets the statute, misreads case law,
and mischaracterizes the trade court's decision below.

Most conspicuously, the Government fails to acknowledge 28 U.S.C. § 1585
and 28 U.S.C. § 2643(c)(1), both of which JDI discussed in its opening brief.  *See*
Appellant's Br. at 33.  Section 1585 grants the CIT "all the powers in law and
equity of . . . a district court of the United States{,}" while § 2643(c)(1) provides
that "the Court of International Trade may . . . order any . . . form of relief that is
appropriate in a civil action, including, but not limited to, declaratory judgments,
orders of remand, *injunctions*, and writs of mandamus and prohibition."
(Emphasis added.)

Ignoring these provisions, the Government cites only 19 U.S.C.
§ 1516a(g)(7)(A), *see* Gov. Br. at 30, but this provision merely grants USMCA
panels authority to issue *remands* – not injunctions.  *See* 19 U.S.C.
§ 1516a(g)(7)(A) (Action upon remand) ("If a determination is referred to a

binational panel . . . under . . . article 10.12 of the USMCA and the panel . . . makes a decision ***remanding*** the determination to the administering authority . . . , the administering authority . . . shall . . . take action not inconsistent with the decision of the panel . . . .") (emphasis added); *see also* S. Rep. 100-519 (1988), at 31 ("This provision mirrors the existing ***remand procedures*** of the CIT in antidumping and countervailing duty cases . . . .") (emphasis added).

The Government also misconstrues JDI's references to 19 U.S.C. § 1516(a)(g)(5)(C) and (g)(6).    According to the Government, neither § 1516a(g)(5)(C) nor § 1516a(g)(6) "constrains a panel's authority to direct Commerce to reinstate the 1.57% cash deposit rate as of the AR 2 final results, and refund amounts paid above that rate."  Gov. Br. at 32.  This misses the point.  Whereas § 1516a(c)(2) (cross-referenced by § 1516a(g)(6)) authorizes the CIT to enjoin liquidation of entries covered by an agency determination, Congress did not authorize USMCA panels to do the same.  Rather, when USMCA panel review of an agency determination is requested, Congress authorized ***Commerce*** – not the USMCA panel – to suspend the covered entries.  *See* 19 U.S.C. § 1516a(g)(5)(C).  Thus, § 1516a(c)(2), (g)(5)(C), and (g)(6) corroborate that Congress withheld injunctive power from USMCA panels.

The Government also misreads court and binational panel decisions.  The Government cites *Bldg. Sys. de Mexico* for the general proposition that "the

20

binational panel process replaces the forum – not the remedies – available to the parties." Gov. Br. at 30-31 (quoting *Bldg. Sys. de Mexico v. United States*, 476 F. Supp. 3d 1401, 1410 (Ct. Int'l Trade 2020)). But, as detailed above, Congress delegated only remand authority to USMCA panels – not injunctive powers. Nothing in *Bldg. Sys. de Mexico* indicates that USMCA panels have the authority to provide injunctive relief.

Next, citing a NAFTA panel decision, the Government claims that "binational panels have considered allegations that Commerce imposed incorrect cash deposit rates without questioning whether the panel would have the authority to order Commerce to replace an existing cash deposit rate." Gov. Br. at 31 (citing *Stainless Steel Sheet and Strip in Coils from Mexico*, No. USA-MEX-2007-1904-1, 2011 FTAPD LEXIS 2 (Aug. 17, 2011) ("*Stainless Steel from Mexico*")). To the contrary, this NAFTA decision reinforces the conclusion that binational panels lack the injunctive power to require Commerce to reinstate an AD deposit rate retroactively. While the respondents in that case challenged the AD deposit rate calculated in the 2004-2005 administrative review, the NAFTA panel agreed with Commerce that the issue was moot because that cash deposit rate was no longer in effect. *See Stainless Steel from Mexico*, 2011 FTAPD LEXIS at **47-48 & *50 ("Commerce's determination that computing a new {cash deposit rate} is futile and unnecessary because the amount of duties Customs is to collect at the border ***on***

21

***ongoing entries*** was superseded by the results of a subsequent administrative review . . . is reasonable.") (emphasis added).  The NAFTA panel did not even consider, nor did any party argue, that the panel had the authority to issue an injunction requiring Commerce to change the AD deposit rate retroactively.

Lastly, in contending that the trade court "merely recognized" JDI's argument that "binational panels cannot order 'retroactive' reinstatement of a cash deposit rate and refunds" but rejected the argument as unpersuasive, *see* Gov. Br. at 34, the Government mischaracterizes the trade court's decision below.  The court addressed JDI's argument regarding retroactive relief in a section prefaced by the subheading, "Plaintiff's request to reinstate retroactively the cash deposit rate of 1.57% and to refund excess cash deposits."  Appx12.  In that section, the court limited its discussion to an "alternative remedy" available to JDI through participation in administrative reviews (and subsequent appeals of such reviews).  *See* Appx12-16.  At no point in this discussion did the court suggest that USMCA panels had the injunctive power to provide retroactive relief.  *See id.*

Absent the power to grant injunctive relief, USMCA panels cannot provide the relief granted by the CIT in *Cooper Tire* – an injunction directing Commerce to set aside an unlawful AD deposit rate and to reinstate the lawful AD deposit rate retroactively.  *See Cooper Tire & Rubber Co. v. United States*, 217 F. Supp. 3d 1373, 1377, 1384 (Ct. Int'l Trade 2017); *Cooper Tire & Rubber Co. v. United*

AMERICAS 124963226

*States*, No. 15-00251, 2017 Ct. Intl. Trade LEXIS 131, at *8-10 (Sept. 25, 2017). The only adequate remedy for an unlawfully assigned AD deposit rate is a retroactive reinstatement of the lawful deposit rate; otherwise, Commerce's legal error would escape judicial review without remedy.

> **b.     USMCA panels lack the power to provide necessary prospective relief**

JDI also seeks a binding order to prevent Commerce from repeating its unlawful practice (violating 19 U.S.C. § 1675(a) and Congressional intent) going forward.  In arguing that USMCA panels can provide the necessary prospective relief, the Government misinterprets the statute and reiterates the CIT's faulty logic.

The Government contends that, because 28 U.S.C. § 2643(c)(5) bars the CIT from providing declaratory relief, "J.D. Irving cannot show that binational panel review is manifestly inadequate on this basis."  Gov. Br. at 34.  Section 2643(c)(1) states, "In any civil action involving an antidumping or countervailing duty proceeding regarding a class or kind of merchandise of a free trade country . . . , the Court of International Trade may not order declaratory relief."  According to the Government, this provision does not contain any exceptions that would permit declaratory relief for JDI's claim, *see* Gov. Br. at 33, but JDI does not argue for an exception.  Rather, because JDI seeks a declaratory judgment or binding ruling barring Commerce from applying a general practice, § 2643(c)(5) – which pertains

23

to actions particular to antidumping or countervailing duty provisions involving goods from Canada or Mexico – does not apply in the first instance. *See* Appellant's Br. at 44 n.5.

Similarly, in *Canadian Lumber Trade Alliance*, this court affirmed the CIT's declaratory judgment that CBP must not apply the Byrd Amendment to goods from Canada or Mexico subject to antidumping or countervailing duty orders, *see* 517 F.3d 1319, 1325 (Fed. Cir. 2008) – presumably because § 2643(c)(5) cannot apply to an issue a NAFTA panel is unable to remedy.  While the Government claims that the court "determined that the plaintiffs' claims for declaratory . . . relief were moot{,}" Gov. Br. at 33, the Government is mistaken.  To the contrary, the court "affirm{ed} the declaratory judgment issued by the Court of International Trade, because at least one Plaintiff-Appellee has standing to seek it, and because the Court of International Trade properly interpreted the {Byrd Amendment} . . . to be inapplicable to goods imported from Canada or Mexico." *Canadian Lumber*, 517 F.3d at 1325; *see also id.* at 1344 ("We AFFIRM the Court of International Trade's declaratory judgment that, pursuant to Section 408 of the {NAFTA Implementation Act}, the {Byrd Amendment} does not apply to antidumping and countervailing duties assessed on imports of goods from Canada or Mexico . . . .").

Moreover, the Government fails to rebut JDI's argument that USMCA panels lack the ability to provide the necessary prospective relief, because panel

AMERICAS 124963226

decisions are binding only "with respect to the particular matter between the Parties that is before the panel." USMCA Ch. 10, Art. 10.12, ¶9; *see also* 19 U.S.C. § 1516a(b)(3); H. Rep. No. 103-361, at 83 (1ˢᵗ Sess. 1993). In response, the Government simply reiterates the trade court's logic – "because a panel decision with respect to any legal issue lacks precedential effect, a panel decision as to any legal issue before it would be manifestly inadequate{,}" Appx16 – without addressing JDI's explanation for why the court's logic was flawed. *See* Gov. Br. at 34-35. Contrary to the trade court's reasoning, a USMCA panel's disposition of a legal issue in favor of the complainant will provide adequate relief in virtually all cases before it, because the plaintiff will obtain the relief it seeks: *e.g.*, a negative antidumping determination, a negative countervailing duty determination, a negative injury determination, changes to the antidumping or countervailing duty rates to be assessed on entries covered by the contested administrative review. In stark contrast, a USMCA panel's endorsement of JDI's legal claim would fail to provide any relief at all – retroactive or prospective.

> ## 2. Commerce administrative reviews cannot provide adequate relief

In arguing that participation in administrative reviews would provide adequate relief, the Government merely asserts that "the traditional way to recoup contested cash deposits is through administrative reviews for the periods in which J.D. Irving paid the contested 11.59% cash deposit rate . . . ." Gov. Br. at 36. JDI,

AMERICAS 124963226

however, challenges Commerce's "traditional way" of implementing administrative reviews itself. Consequently, JDI's participation in reviews would not provide any relief for its legal claim at all. Moreover, in arguing that compelling JDI to participate in unnecessary reviews would not perpetuate Commerce's unlawful practice, the Government (once again) ignores pertinent case law.

Like the trade court below, the Government fails to appreciate the nature of JDI's legal claim. JDI argues that, because it already had been assigned an AR3 AD deposit rate by operation of law, it was unlawful for Commerce to assign JDI the AD cash deposit rate calculated in the *AR2 Review* (a dumping margin for an earlier period) in the first place. *See* Appx46-48. The only adequate remedy for an unlawfully assigned AD deposit rate is a retroactive reinstatement of the lawful AD deposit rate. Absent the injunctive relief sought by JDI, the illegality of the AR3 AD deposit rate (as assigned to JDI) would be left unaddressed. To illustrate this, JDI included the following example in its opening brief, which the Government declined to address:

> Commerce conducts an administrative review and calculates a final dumping rate for the respondent subject producer of 5%. Despite this, in a move that would clearly be unlawful, Commerce instructs CBP to collect AD cash deposits at a rate of 1,000%. Although the importer could participate in an administrative review to obtain refunds of overpaid AD cash deposits, CBP's ultimate liquidation of the importers' entries at a lawful AD assessment rate would fail to remedy Commerce's unlawful assignment of the 1,000% deposit rate.

26

> Commerce was able to assign an unlawful AD deposit rate without consequence, despite the resulting harm to the importer and exporter (with the importer being forced to tender cash deposits at the unlawful 1,000% rate to continue purchasing from the exporter, and the exporter's lost U.S. sales due to the prohibitively high 1,000% rate). J.D. Irving's situation is no different.

Appellant's Br. at 36-37.  The Government's silence in the face of this simple illustration speaks volumes.

The Government also argues that "the review process could not be manifestly inadequate when the final results of AR 4 already resulted in a decreased cash deposit rate."  Gov. Br. 37.  To the contrary, AR4 (which covers the 2021 period of review) reinforces the conclusion that compelling JDI to participate in unnecessary reviews fails to remedy its legal claim.  The Government's response brief includes the following chart (Gov. Br. at 9):

|  | 2019 | 2020 | | 2021 | | 2022 | 2023 | |
|---|---|---|---|---|---|---|---|---|
|  |  | Jan.-Nov. 2020 | Dec. 2020 | Jan.-Nov. 2021 | Dec. 2021 |  | Jan.-July 2023 | Aug. 2023 – present |
| Cash Deposit Rate | 6.04% | 6.04% | 1.57% | 1.57% | **11.59%** | **11.59%** | **11.59%** | 6.20% |
| Assessed AD Duty Rate | 11.59% | 6.04% | 1.57% | 6.20% | | TBD | TBD | |
| J.D. Irving Review Requested | Yes | No | | Yes | | Yes | TBD | |
| Review Period | AR2 | AR3 | | AR4 | | AR5 | AR6 (if requested) | |

Contrary to the Government's argument, JDI's (compelled) participation in the AR4 review has not remedied its legal claim.  But for Commerce's unlawful practice of prioritizing outdated AD rates determined in completed administrative

reviews over current AD rates determined by operation of law, JDI would not have been compelled to request an AR4 review in the first place.[2]  Had Commerce followed the statute and Congressional intent, JDI's cash deposit rate would have remained the most recent AR3 rate (1.57%); JDI would have withdrawn its request for an AR4 review; and JDI's year-2021 entries would be assessed at an AD rate of 1.57% instead of 6.20%, as illustrated in the modified chart below:

| | 2019 | 2020 | | 2021 | | 2022 | 2023 | |
|---|---|---|---|---|---|---|---|---|
| | | Jan.-Nov. 2020 | Dec. 2020 | Jan.-Nov. 2021 | Dec. 2021 | | Jan.-July 2023 | Aug. 2023 – present |
| Cash Deposit Rate | 6.04% | 6.04% | 1.57% | **1.57%** | | **1.57%** | **1.57%** | |
| Assessed AD Duty Rate | 11.59% | 6.04% | 1.57% | **1.57%** | | TBD | TBD | |
| J.D. Irving Review Requested | Yes | No | | Yes | | Yes | TBD | |
| Review Period | AR2 | AR3 | | AR4 | | AR5 | AR6 (if requested) | |

Commerce's unlawful practice has real consequences – not only for deposit rates, but also for the final AD duties to be assessed.

Compelling JDI (or any party) to participate in administrative reviews *perpetuates* – rather than remedies – the legal issue raised by JDI.  Absent the retroactive and prospective relief sought by JDI, Commerce will continue its unlawful practice.  Further, as explained in JDI's opening brief, the CIT "has

---

[2] For this reason, J.D. Irving moved that the CIT consider its appeal on an expedited basis, so that the company could make an informed decision of whether to continue to participate before the deadline to withdraw requests for AR4 reviews in early June 2022. *See* Appx178-180.

AMERICAS 124963226

repeatedly found section 1581(i) jurisdiction in cases where . . . the review that the plaintiff seeks to prevent will have already occurred by the time relief under another provision of section 1581 is available, rendering such relief manifestly inadequate."  Appellant's Br. at 44-45 (quoting *Dofasco Inc. v. United States*, 326 F. Supp. 2d 1340, 1346 (Ct. Int'l Trade 2004) (citations omitted), *aff'd* 390 F.3d 1370 (Fed. Cir. 2004).  Similarly here, JDI seeks the freedom to decline to participate in unnecessary administrative reviews when all parties are satisfied with its existing AD rate, consistent with the statute and Congressional intent.

In response, the Government ignores *Dofasco* and simply asserts that JDI "fails to explain why the only forum that could consider such a challenge is the Court of International Trade."  Gov. Br. at 41.  To the contrary, JDI has demonstrated that, while a USMCA panel could hear the legal issue raised by JDI, the panel lacks the authority to remedy Commerce's unlawful practice – either retroactively or prospectively.  Congress did not intend for USMCA panel review to deprive litigants of meaningful relief for valid legal claims.  *See Parkdale Int'l*, 491 F. Supp. 2d at 1271 ("{M}atters not clearly provided for in § 1581(a)-(h) were intended to fall into §1581(i) so that no one would be denied an avenue of relief in this general subject matter area.").

AMERICAS 124963226

## <u>CONCLUSION AND STATEMENT OF RELIEF SOUGHT</u>

For the foregoing reasons and those established in the Appellant's Brief, J.D. Irving respectfully requests that the Court reverse the CIT's decision and hold that the trade court shall exercise jurisdiction under § 1581(i) to hear J.D. Irving's action.

Respectfully submitted,

/s/ Jay C. Campbell
Walter J. Spak
Jay C. Campbell

WHITE & CASE LLP
701 Thirteenth Street, NW
Washington, DC 20005
(202) 626-3600

Counsel to J.D. Irving, Limited

September 6, 2023

AMERICAS 124963226

(Form 19)

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATIONS

### CAFC Court No. 2023-1652
### J.D. Irving, Ltd. v. US

The foregoing filing complies with the relevant type-volume limitation of the Federal Rules of Appellate Procedure and Federal Circuit Rules because it meets one of the following:

☑     the filing has been prepared using a proportionally-spaced typeface and includes 6,834 words.

☐     the filing has been prepared using a monospaced typeface and includes _____ lines of text.

☐     the filing contains _____ pages / _____ words / _____ lines of text, which does not exceed the maximum authorized by this court's order (ECF No. _____).

Date: September 6, 2023      Signature: _____ /s/ Jay C. Campbell_____

                                    Name: _____ Jay C. Campbell_____

# CERTIFICATE OF SERVICE

## <u>J.D. Irving, Ltd. v. US</u>
## CAFC Court No. 2023-1652

I hereby certify that on September 6, 2023 the foregoing document filed on behalf of J.D. Irving, Limited was served upon the following parties by operation of the Court's electronic filing system.

> Eric E. Laufgraben
> U.S. Department of Justice
> Eric.E.Laufgraben@usdoj.gov
>
> Paul Keith
> U.S. Department of Commerce
> Paul.Keith@trade.gov

Date: September 6, 2023        /s/ Jay C. Campbell
                                          Jay C. Campbell
                                          WHITE & CASE LLP
                                          701 Thirteenth Street, NW
                                          Washington, DC 20005
                                          (202) 626-3600