2023-1652

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

J.D. IRVING, LTD.,

Plaintiff-Appellant,

v.

UNITED STATES,

Defendant-Appellee

Appeal from the United States Court of International Trade
in Case No. 1:21-CV-00641
Judge Timothy M. Reif

## COMBINED PETITION FOR PANEL REHEARING AND REHEARING EN BANC FOR PLAINTIFF-APPELLANT J.D. IRVING, LTD.

Walter J. Spak
Jay C. Campbell
WHITE & CASE LLP
701 13th Street NW
Washington, DC 20005
(202) 626-3600
Counsel to Plaintiff-Appellant J.D.
Irving, Limited

November 22, 2024

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## <u>CERTIFICATE OF INTEREST</u>

| | |
|---:|:---|
| **Case Number** | 2023-1652 |
| **Short Case Caption** | J.D. Irving, Ltd. v. US |
| **Filing Party/Entity** | Appellant J.D. Irving, Limited |

---

**Instructions:**

1. Complete each section of the form and select none or N/A if appropriate.

2. Please enter only one item per box; attach additional pages as needed, and check the box to indicate such pages are attached.

3. In answering Sections 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance.

4. Please do not duplicate entries within Section 5.

5. Counsel must file an amended Certificate of Interest within seven days after any information on this form changes. Fed. Cir. R. 47.4(c).

---

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.


Date: 11/22/2024

Signature: /s/ Jay C. Campbell

Name: Jay C. Campbell

| **1. Represented Entities.** Fed. Cir. R. 47.4(a)(1). | **2. Real Party in Interest.** Fed. Cir. R. 47.4(a)(2). | **3. Parent Corporations and Stockholders.** Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities. ☐ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities. ☐ None/Not Applicable |
| J.D. Irving, Limited | N/A | J.K. Irving, Limited |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |

☐  Additional pages attached

**4. Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

☐ None/Not Applicable ☐ Additional pages attached

| | | |
|---|---|---|
| White & Case LLP | | |
| Cristina M. Cornejo | | |
| | | |

**5. Related Cases.** Other than the originating case(s) for this case, are there related or prior cases that meet the criteria under Fed. Cir. R. 47.5(a)?

☑ Yes (file separate notice; see below) ☐ No ☐ N/A (amicus/movant)

If yes, concurrently file a separate Notice of Related Case Information that complies with Fed. Cir. R. 47.5(b). **Please do not duplicate information.** This separate Notice must only be filed with the first Certificate of Interest or, subsequently, if information changes during the pendency of the appeal. Fed. Cir. R. 47.5(b).

**6. Organizational Victims and Bankruptcy Cases**. Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

☑ None/Not Applicable ☐ Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |

**TABLE OF CONTENTS**

RULE 35(B) STATEMENT ........................................................................1

INTRODUCTION AND POINTS OF LAW AND FACT OVERLOOKED
AND MISAPPREHENDED......................................................................2

ARGUMENT .........................................................................................4

CONCLUSION AND REQUEST FOR PANEL REHEARING
OR REHEARING EN BANC ...............................................................11

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*J.D. Irving, Ltd. v. United States*,
119 F.4th 48 (Fed. Cir. 2024) ................................................................2

*Cooper Tire & Rubber Co. v. United States*,
217 F. Supp. 3d 1373, 1377, 1384 (Ct. Int'l Trade 2017) ...................7

*Cooper Tire & Rubber Co. v. United States*,
No. 15-00251, 2017 Ct. Intl. Trade LEXIS 131, at *8-10 (Sept. 25, 2017).........7

*Rimco Inc. v. United States*,
98 F.4th 1046, 1052 (Fed. Cir. 2024) ...................................................9

*Parkdale Int'l, Ltd. v. United States*,
491 F. Supp. 2d 1262, 1271 (Ct. Int'l Trade 2007) ...........................10

## STATUTES AND REGULATIONS

19 U.S.C. § 1675(a)(2)(C) .......................................................................5

19 C.F.R. § 351.212(c)(1) ........................................................................5

19 U.S.C. § 1516a(g)(2)(B) ......................................................................5

19 U.S.C. § 1516a(g)(7)(A) ......................................................................7

19 U.S.C. § 1675(a) .................................................................................9

19 U.S.C. § 1516a(b)(3) ...........................................................................9

## RULE 35(B) STATEMENT

Based on my professional judgment, I, Jay C. Campbell, believe this appeal requires an answer to one or more precedent-setting questions of exceptional importance:

(1) Is the Court's holding that the U.S. Court of International Trade lacks jurisdiction under 28 U.S.C. § 1581(i) to review an argument raised in an administrative review, the final results of which are subject to binational panel review under the United States-Mexico-Canada Agreement ("USMCA"), consistent with § 1581(i) when USMCA panel review would be "manifestly inadequate" to remedy the legal claim raised?

/s/ Jay C. Campbell

Jay C. Campbell
WHITE & CASE LLP
701 13th Street NW
Washington, DC 20005
(202) 626-3600
Counsel to Plaintiff-
Appellant J.D. Irving,
Limited

## INTRODUCTION AND POINTS OF LAW AND FACT OVERLOOKED AND MISAPPREHENDED

Plaintiff-Appellant J.D. Irving, Limited ("Appellant," "J.D. Irving," or "JDI") respectfully submits that the Court's decision in *J.D. Irving, Ltd. v. United States*, 119 F.4th 48 (Fed. Cir. 2024), is grounded on a fundamental misunderstanding of the law and facts pertaining to JDI's legal claim. Lacking a proper appreciation of JDI's legal claim, the Court was unable to evaluate properly the jurisdictional issue before it: adequacy of relief. The Court also failed to address JDI's request for prospective relief.

The issue presented was whether the U.S. Court of International Trade ("CIT") has jurisdiction under 28 U.S.C. § 1581(i) to review an argument JDI raised in an administrative review, the final results of which (the "*AR 2 Final Results*") are subject to binational panel review under the United States-Mexico-Canada Agreement ("USMCA"). The Court held that, "{b}ecause JDI has not shown that administrative review and USMCA panel review would be manifestly inadequate, § 1581(i) jurisdiction is improper." *J.D. Irving*, 119 F.4th at 57. In doing so, however, the Court misunderstood the significance of an unlawfully assigned antidumping duty ("AD") cash deposit rate, the legal claim raised by JDI (contesting an unlawful Department of Commerce ("Commerce") policy).

Neither USMCA panel review nor administrative review can remedy an unlawfully assigned AD cash deposit rate. In an appeal of an administrative review,

a USMCA panel remand order can affect the AD rate applied to entries covered by the review (the "assessment rate"), but is powerless to affect the AD cash deposit rate applied to entries made after conclusion of the review. USMCA panels lack the injunctive power necessary to force Commerce to replace an unlawful AD cash deposit rate applied to prior import entries with a lawful cash deposit rate. Participation in administrative reviews before Commerce also fails to remedy an unlawfully assigned AD cash deposit rate. An administrative review concerns the assessment rate ultimately applied to import entries covered by the review, but fails to remedy a *prior* AD deposit rate that was *unlawfully assigned*. Absent an injunction requiring Commerce to reinstate retroactively a lawful AD cash deposit rate and refund excess cash deposits paid at the unlawful rate, Commerce would escape any accountability for its assignment of an unlawful AD deposit rate.

The following sentence in the Court's opinion highlights its error: "Accordingly, here, if the binational panel invalidates the AR 2 Final Results, Commerce would not assess JDI's suspended and unliquidated entries at AR 2's final 11.59% rate, and JDI would receive appropriate refunds for deposits made at that higher rate." *J.D. Irving*, 119 F.4th at 56. Contrary to the Court's reasoning, JDI's action does not concern imports entered during the AR 2 period. Rather, JDI challenges Commerce's assignment of an unlawful AD cash deposit rate to its entries made as of the conclusion of the AR 2 Final Results (*i.e.*, *after* the period examined

3

in AR 2, calendar year 2019). Assessment of JDI's AR 2 entries at a rate lower than AR 2's final 11.59% rate would not remedy JDI's legal claim at all.

Furthermore, the Court entirely overlooked that JDI seeks not only retroactive relief, but also prospective relief: a binding order to prevent Commerce from continuing to apply an unlawful policy – prioritizing outdated AD deposit rates over current AD deposit rates established by operation of law – going forward. Neither USMCA panels nor administrative reviews can provide such prospective relief. Participation in unnecessary administrative reviews ***perpetuates*** – rather than remedies – the harm resulting from Commerce's unlawful policy.

A panel rehearing or rehearing *en banc* is therefore required to permit the Court to correct its misunderstanding and reconsider its holding that neither USMCA panel review nor administrative review "would be manifestly inadequate" to remedy Commerce's unlawful policy and assignment of an unlawful AD cash deposit rate to JDI. *See J.D. Irving*, 119 F.4th at 57.

## ARGUMENT

JDI respectfully submits that panel rehearing or rehearing *en banc* is warranted because the Court misunderstood the legal claim raised by JDI and overlooked that JDI seeks both retroactive and prospective relief.

JDI seeks judicial review for a novel legal claim contesting Commerce's policy of prioritizing ***outdated*** AD cash deposit rates calculated in completed

administrative reviews over **current** AD cash deposit rates established for more recent periods pursuant to the parties' agreement and by operation of law under 19 U.S.C. § 1675(a)(2)(C) and 19 C.F.R. § 351.212(c)(1). Commerce's policy is inconsistent with the statute and Congressional intent. *See* Appellant's Br. at 4-17. Applying this unlawful policy, Commerce wrongly assigned JDI an outdated AD cash deposit rate based on the results of the AR 2 administrative review (covering calendar year 2019) even though JDI already had been assigned an AD cash deposit rate for the more recent AR 3 review (covering calendar year 2020) by operation of law. *See id.* at 10-14.

Commerce addressed JDI's legal argument in the *AR 2 Final Results*. *See* Appx175-176. Subsequently, other interested parties requested binational panel review of the *AR 2 Final Results* under Article 10.12 of the USMCA, thereby transferring review of Commerce's determination to a USMCA panel. *See* Appx117; *see also* 19 U.S.C. § 1516a(g)(2)(B). Because USMCA panel review would fail to provide any relief for JDI's legal claim, JDI commenced an action at the CIT, invoking the court's jurisdiction under 28 U.S.C. § 1581(i) to review Commerce's AD cash deposit instructions, which unlawfully replaced JDI's AR 3 AD cash deposit rate with the AR 2 AD cash deposit rate pursuant to Commerce's unlawful policy. *See* Appx33-49. The CIT dismissed JDI's action, concluding that it lacked jurisdiction under § 1581(i) to entertain JDI's legal claim, *see* Appx9, and

this Court affirmed on October 10, 2024. *See J.D. Irving*, 119 F.4th at 49-50, 56-57.

In holding that § 1581(i) jurisdiction is unavailable, the Court "reject{ed} JDI's argument that binational panel review and administrative review would be manifestly inadequate." *J.D. Irving*, 119 F.4th at 56. The Court, however, failed to appreciate JDI's legal claim. Regarding USMCA panel review, the Court reasoned that, "if the binational panel invalidates the AR 2 Final Results, Commerce would not *assess* JDI's suspended and unliquidated entries at AR 2's final 11.59% rate, and JDI would receive appropriate refunds for deposits made at that higher rate." *Id.* at 56 (emphasis added). The Court's statement betrays a fundamental misunderstanding of JDI's legal claim, which is ***not*** about AD ***assessment*** or JDI's entries during the AR 2 period of review. Rather, JDI's action concerns the AR 2 cash deposit rate that Commerce unlawfully assigned to JDI to implement the *AR 2 Final Results* pursuant to an unlawful policy. Through the issuance of cash deposit instructions, Commerce unlawfully applied the AR 2 AD cash deposit rate ***to JDI's entries as of the conclusion of the AR 2 review*** (wrongly replacing the AR 3 AD cash deposit rate established for JDI by operation of law for a more recent period, calendar year 2020).

Contrary to the Court's decision, a USMCA panel would be powerless to remedy JDI's legal claim. The only remedy for an ***unlawfully assigned*** AD deposit

rate is a retroactive reinstatement of the lawful AD deposit rate. Such relief requires a court-ordered injunction, a power the CIT has under 28 U.S.C. § 1585 and 28 U.S.C. § 2643(c)(1) – both of which grant the CIT "all the powers in law and equity . . . of a district court," including injunctive relief – and has exercised to order Commerce to set aside an AD deposit rate and reinstate a lawful AD cash deposit rate retroactively. *See Cooper Tire & Rubber Co. v. United States*, 217 F. Supp. 3d 1373, 1377, 1384 (Ct. Int'l Trade 2017); *Cooper Tire & Rubber Co. v. United States*, No. 15-00251, 2017 Ct. Intl. Trade LEXIS 131, at *8-10 (Sept. 25, 2017). USMCA panels, by contrast, only have the authority to remand final determinations to Commerce for reconsideration. *See* 19 U.S.C. § 1516a(g)(7)(A). Moreover, the USMCA panel that will review the *AR 2 Final Results* can only remand Commerce decisions affecting entries made during the AR 2 period of review; JDI's entries to which the unlawful AR 2 deposit rate was applied are covered by subsequent administrative reviews, and the AR 2 deposit rate is no longer in effect.

While recognizing that USMCA panels lack the power to grant injunctive relief, the Court appears to have reasoned that administrative reviews and USMCA panel review would be adequate to remedy JDI's legal claim because, ultimately, JDI's entries would be assessed at the proper rate. *See J.D. Irving*, 119 F.4th at 56. To the contrary, the ultimate ***assessment*** of final AD duties ***does nothing*** to remedy an AD cash deposit rate that was ***unlawfully assigned*** in the first place.

To illustrate, consider the following example. Commerce conducts an administrative review involving USMCA-country merchandise and calculates a final dumping rate for the respondent of 5%. Despite this, in a move that would clearly be unlawful, Commerce instructs U.S. Customs and Border Protection ("CBP") to collect AD cash deposits at a rate of 10,000%. Although the importer could participate in an administrative review (and any subsequent USMCA panel review) to obtain refunds of overpaid AD cash deposits, CBP's ultimate liquidation of the importer's entries at a lawful AD assessment rate would fail to remedy Commerce's unlawful assignment of the 10,000% deposit rate. Commerce was able to assign an unlawful AD deposit rate without consequence or accountability, despite the resulting harm to the importer and exporter (with the importer forced to tender cash deposits at the unlawful 10,000% rate to continue purchasing from the exporter, and the exporter's lost U.S. sales due to the prohibitively high 10,000% rate).

JDI's situation is no different. JDI seeks its day in court to contest Commerce's unlawful policy under which Commerce wrongly assigned JDI the outdated AR 2 cash deposit rate despite JDI previously having been assigned an AD cash deposit rate for a more recent period (AR 3) by operation of law. Absent a court-ordered injunction requiring Commerce to reinstate retroactively the lawful AR 3 cash deposit rate and refund the excess AD cash deposits paid at the unlawful rate, JDI's legal claim – and Commerce's unlawful policy – will not be remedied at

all. Contrary to the Court's reasoning, this is not about USMCA panel review or administrative review being less effective than "JDI's desired remedy." *J.D. Irving*, 119 F.4th at 56. Rather, neither USMCA panel review nor administrative review would remedy Commerce's unlawful policy and unlawful assignment of an outdated AD deposit rate at all. USMCA panel review and administrative review would be "an exercise in futility, or incapable of producing any result" to remedy JDI's legal claim. *See Rimco Inc. v. United States*, 98 F.4th 1046, 1052 (Fed. Cir. 2024).

In addition, the Court entirely overlooked JDI's request for prospective relief. JDI not only seeks a retroactive reinstatement of the lawful AR 3 AD deposit rate. JDI also seeks a binding order to prevent Commerce from continuing to apply its unlawful policy – prioritizing outdated AD deposit rates over AD deposit rates established by operation of law for more recent periods, contrary to 19 U.S.C. § 1675(a) and Congressional intent – going forward. *See* Appellant's Br. at 39-45; Appellant's Reply Br. at 23-25, 28-29. USMCA panel decisions are binding only "with respect to the particular matter between the Parties that is before the panel." USMCA Ch. 10, Art. 10.12 ¶9; 19 U.S.C. § 1516a(b)(3); H. Rep. No. 103-361, at 83 (1st Sess. 1993) ("The intent of this provision is to make clear that a panel or committee decision is binding only with respect to the particular matter before that panel and does not constitute binding precedent on U.S. courts or other binational panels."). Consequently, USMCA panels are incapable of providing prospective

relief. Furthermore, participation in unnecessary administrative reviews – the unfortunate outcome of Commerce's unlawful policy that Congress intended to prevent – perpetuates, rather than remedies, the legal problem raised by JDI. In short, both USMCA panel review and administrative reviews are "manifestly inadequate" to provide any form of prospective relief.

The Court stated, "We reject JDI's attempt to use § 1581(i) to make an end run around the binational panel's exclusive review." *J.D. Irving*, 119 F.4th at 55. JDI seeks nothing of the sort. JDI has raised a legal claim that will go completely unremedied absent the injunctive and precedential relief only the CIT can provide. Congress did not intend for USMCA panel review to deprive litigants of meaningful relief for valid legal claims. *See Parkdale Int'l, Ltd. v. United States*, 491 F. Supp. 2d 1262, 1271 (Ct. Int'l Trade 2007) ("{M}atters not clearly provided for in § 1581(i) so that no one would be denied an avenue of relief in this general subject matter area.").

## CONCLUSION AND REQUEST FOR PANEL REHEARING OR REHEARING EN BANC

For the foregoing reasons, Plaintiff-Appellant respectfully requests that the Court reconsider its holding that the CIT lacks jurisdiction under 28 U.S.C. § 1581(i) to review JDI's challenge to Commerce's unlawful policy of prioritizing outdated AD rates calculated in completed administrative reviews over current AD rates determined by operation of law, contrary to the statute and Congressional intent, and Commerce's unlawful assignment of the AR 2 AD cash deposit rate to JDI pursuant to that policy.

Respectfully submitted,

 /s/ Jay C. Campbell
Jay C. Campbell
Walter J. Spak
WHITE & CASE LLP
701 Thirteenth Street, NW
Washington, DC 20005
(202) 626-3600

Counsel to J.D. Irving, Limited

November 22, 2024

ADDENDUM

119 F.4th 48
United States Court of Appeals, Federal Circuit.

J.D. IRVING, LTD., Plaintiff-Appellant

v.

UNITED STATES, Department of
Commerce, Defendants-Appellees

2023-1652
|
Decided: October 10, 2024

**Synopsis**
**Background:** Canadian importer filed suit against United
States, challenging instructions that Department of
Commerce issued to Customs and Border Protection (CBP)
to collect cash deposits on importer's entries at rate assigned
in administrative review of antidumping duty order covering
softwood lumber products from Canada. Government moved
to dismiss. The Court of International Trade, Timothy M.
Reif, J., 615 F.Supp.3d 1323, granting motion, holding it
lacked subject matter jurisdiction. Importer appealed.

**Holdings:** The Court of Appeals, Stoll, Circuit Judge, held
that:

importer's challenge was to final results of administrative
review of antidumping duty order;

pendency of binational panel review did not mean
judicial review was unavailable under statute applicable to
review of Commerce's determinations in antidumping duty
proceedings; and

binational panel review and administrative review were not
manifestly inadequate.

Affirmed.

**Procedural Posture(s):** Motion to Dismiss.

**\*49** Appeal from the United States Court of International
Trade in No. 1:21-cv-00641-TMR, Judge Timothy M. Reif.

**Attorneys and Law Firms**

Jay Charles Campbell, White & Case LLP, Washington, DC,
argued for plaintiff-appellant. Also represented by Walter
Spak.

Eric Laufgraben, Commercial Litigation Branch, Civil
Division, United States Department of Justice, Washington,
DC, argued for defendants-appellees. Also represented by
Brian M. Boynton, Claudia Burke, Patricia M. McCarthy;
Elio Gonzalez, Office of the Chief Counsel for Trade
Enforcement and Compliance, United States Department of
Commerce, Washington, DC.

Before Stoll and Cunningham, Circuit Judges, and Cecchi,
District Judge. [1]

**Opinion**

Stoll, Circuit Judge.

The sole issue in this appeal is whether the U.S. Court of
International Trade (CIT) erred in holding that it lacked
subject matter jurisdiction under 28 U.S.C. § 1581(i), the
CIT's residual grant of jurisdiction. J.D. Irving (JDI), a
Canadian producer, exporter, and importer of merchandise
subject to a January 2018 antidumping duty order on certain
softwood lumber products from Canada, appeals the CIT's
dismissal of its case for lack of subject matter jurisdiction.
Although JDI acknowledged that its action would normally
arise under 28 U.S.C. § 1581(c), it asserted that the CIT
has subject matter jurisdiction pursuant to § 1581(i). We
determine that jurisdiction under § 1581(c) could have been
available to JDI absent binational panel review because (1)
the true nature of JDI's suit is a challenge to the Final
Results of a second administrative review, and (2) JDI has
not met its burden to show that administrative review and
binational panel review would be manifestly inadequate.
Because jurisdiction under § 1581(i) is strictly limited and
may not be invoked when jurisdiction under § 1581(c) could
have been available, we affirm the CIT's dismissal for lack of
**\*50** subject matter jurisdiction under § 1581(i).

BACKGROUND

I

Before addressing the relevant facts and procedural history of this action, we begin with a brief overview of the applicable legal framework.

The U.S. Department of Commerce may levy antidumping duties on goods "sold in the United States at less than ... fair value." *Guangdong Wireking Housewares & Hardware Co. v. United States*, 745 F.3d 1194, 1196 (Fed. Cir. 2014) (quoting 19 U.S.C. § 1673). Upon the entry of merchandise covered by an antidumping duty order, "an importer must make a cash deposit of estimated duties (cash deposit rate)." *Consol. Bearings Co. v. United States*, 348 F.3d 997, 1000 (Fed. Cir. 2003) (citing 19 U.S.C. § 1673e(a)(3)). Under Commerce's accounting system, the actual liquidation—i.e., final computation of duties—of entries subject to an antidumping duty order may occur years after importation. *Id.* "Before final liquidation, any interested party may request an administrative review of the antidumping duty order." *Id.* (citing 19 U.S.C. § 1675). The statute providing for administrative review is 19 U.S.C. § 1675(a)(1). *N.M. Garlic Growers Coal. v. United States*, 953 F.3d 1358, 1360 (Fed. Cir. 2020). The Final Results of an administrative review "shall be the basis for the assessment of ... antidumping duties on entries of merchandise covered by the determination and for deposits of estimated duties." *Consol. Bearings*, 348 F.3d at 1000 (quoting 19 U.S.C. § 1675(a)(2)(C)). Commerce's implementing regulation, 19 C.F.R. § 351.212, provides for the calculation of assessment rates. *Am. Signature, Inc. v. United States*, 598 F.3d 816, 820 n.5 (Fed. Cir. 2010). Absent a request for administrative review, "Commerce liquidates the merchandise at the cash deposit rates (i.e., the deposit rates at the time of entry)." *Consol. Bearings*, 348 F.3d at 1000 (citing 19 C.F.R. § 351.212(c)(1)(i)).

Section 1581(c) of Title 28 provides the CIT with exclusive jurisdiction over civil actions commenced under 19 U.S.C. § 1516a, which governs judicial review of Commerce's determinations in antidumping duty proceedings. *Rimco Inc. v. United States*, 98 F.4th 1046, 1052 (Fed. Cir. 2024). Someone wishing to challenge an antidumping duty order may bring suit before the CIT, or, if the "dumped" goods originated in Mexico or Canada, the antidumping order may be challenged before a binational panel. *Canadian Wheat Bd. v. United States*, 641 F.3d 1344, 1347 (Fed. Cir. 2011). Liquidation of entries may be suspended pending a decision by either the CIT or a binational panel. *See id.*; 19 U.S.C. § 1516a(g)(5)(C).

The United States–Mexico–Canada Agreement (USMCA) went into effect on July 1, 2020, superseding the North American Free Trade Agreement (NAFTA). USMCA Article 10.12, entitled "Review of Final Antidumping and Countervailing Duty Determinations," provides a dispute settlement mechanism for purposes of reviewing antidumping duty determinations issued by the United States, Canada, and Mexico. *See* United States–Mexico–Canada Agreement, art. 10.12, July 1, 2020, OFF. U.S. TRADE REP., https://ustr.gov/sites/default/files/agreements/FTA/USMCA/Text/10_Trade_Remedies.pdf [hereinafter USMCA]. In pertinent part, USMCA Article 10.12 provides:

1.... [E]ach Party [i.e., the United States of America, the United Mexican States, and Canada] shall replace judicial review of final antidumping ... duty determinations with binational panel review.

**\*51** 2. An involved Party may request that a panel review, based on the administrative record, a final antidumping ... duty determination of a competent investigating authority of an importing Party to determine whether such determination was in accordance with the antidumping ... duty law of the importing Party. For this purpose, the antidumping ... duty law consists of the relevant statutes, legislative history, regulations, administrative practice, and judicial precedents to the extent that a court of the importing Party would rely on such materials in reviewing a final determination of the competent investigating authority.

...

4. A request for a panel shall be made in writing to the other involved Party within 30 days following the date of publication of the final determination in question in the official journal of the importing Party. ...

...

8. The panel may uphold a final determination, or remand it for action not inconsistent with the panel's decision. ...

9. The decision of a panel under this Article shall be binding on the involved Parties with respect to the particular matter between the Parties that is before the panel.

...

15.... [E]ach Party shall:

(a) maintain or amend its statutes or regulations to ensure that existing procedures concerning the refund, with interest, of antidumping ... duties operate to give effect to a final panel decision that a refund is due;

...

(c) maintain or amend its statutes or regulations to ensure that:

(i) domestic procedures for judicial review of a final determination may not be commenced until the time for requesting a panel under paragraph 4 has expired ....

USMCA art. 10.12 ¶¶ 1, 2, 4, 8, 9, 15.

Section 1516a(g) of Title 19 codifies the binational panel review process set forth in USMCA Article 10.12. Section 1516a(g)(2) provides:

(g) Review of ... antidumping duty determinations involving free trade area country merchandise

...

(2) Exclusive review of determination by binational panels

If binational panel review of a determination is requested pursuant to ... article 10.12 of the USMCA, then, except as provided in paragraphs (3) and (4)--

(A) the determination is not reviewable under subsection (a), and

(B) no court of the United States has power or jurisdiction to review the determination on any question of law or fact by an action in the nature of mandamus or otherwise.

19 U.S.C. § 1516a(g)(2).

Section 1581(i) of Title 28 is the CIT's "residual" grant of jurisdiction that allows the court to take jurisdiction over designated causes of action founded on other provisions of law. See *Rimco*, 98 F.4th at 1052. It provides:

(i)(1) In addition to the jurisdiction conferred upon the [CIT] by subsections (a)-(h) of this section and subject to the exception set forth in subsection (j) of this section, the [CIT] shall have exclusive jurisdiction of any civil action

commenced against the United States, its agencies, or its officers, that arises out of any law of the United States providing for--

(A) revenue from imports or tonnage;

 **\*52** (B) tariffs, duties, fees, or other taxes on the importation of merchandise for reasons other than the raising of revenue;

(C) embargoes or other quantitative restrictions on the importation of merchandise for reasons other than the protection of the public health or safety; or

(D) administration and enforcement with respect to the matters referred to in subparagraphs (A) through (C) of this paragraph and subsections (a)-(h) of this section.

(2) This subsection shall not confer jurisdiction over an antidumping or countervailing duty determination which is reviewable by--

(A) the [CIT] under [19 U.S.C. 1516a(a)]; or

(B) a binational panel under [19 U.S.C. 1516a(g)].

28 U.S.C. § 1581(i).

## II

In January 2018, Commerce published an antidumping duty order on certain softwood lumber products from Canada. On April 1, 2019, Commerce initiated a first administrative review (AR 1), which covered entries made between June 30, 2017, and December 31, 2018. On March 10, 2020, Commerce initiated a second administrative review (AR 2), which covered entries made between January 1, 2019, and December 31, 2019. Upon publication of the AR 1 Final Results on November 30, 2020, Commerce assigned to JDI the non-selected companies' assessment rate of 1.57%.

On March 4, 2021, Commerce initiated a third administrative review (AR 3), which covered entries made between January 1, 2020, and December 31, 2020. No party requested that Commerce review JDI's entries that would have been subject to AR 3. On April 16, 2021, Commerce instructed U.S. Customs and Border Protection: (1) to liquidate JDI's entries that would have been subject to AR 3 at the 1.57% rate then in effect, and (2) to continue to collect cash deposits on JDI's entries at this 1.57% rate.

On May 27, 2021, Commerce published its preliminary AR 2 results. Commerce assigned non-selected companies a preliminary rate of 12.05%, which would serve as the assessment rate and the cash deposit rate. On July 8, 2021, JDI filed a case brief in AR 2 addressed to the Secretary of Commerce, J.A. 88–89, asserting that "the [antidumping duty] cash deposit rate established for the year-2020 [period of review] must remain [JDI]'s cash deposit rate going forward (until changed in a review for a subsequent period, e.g., 2021, 2022, 2023)." J.A. 98.

On November 23, 2021, Commerce issued the AR 2 Final Results in an Issues and Decision Memorandum, in which it: (1) addressed the arguments JDI raised in its July 2021 case brief, and (2) amended the non-selected companies' rate to 11.59%. Commerce explained that although JDI "is under review in this 2019 review [i.e., AR 2] ... no review of [JDI]'s 2020 sales is being conducted" and "[w]hen an entity is not under review, such as [JDI] in 2020 administrative review [i.e., AR 3], [Commerce] do[es] not update its cash deposit rate." J.A. 175. Accordingly, "consistent with [19 U.S.C. § 1675(a)(1)], [Commerce's] regulations, and numerous rulings by the courts, [Commerce] ... assigned [JDI] a cash deposit rate based on the non-selected companies' rate determined for these final results [in AR 2]." J.A. 176. Commerce published the AR 2 Final Results on December 2, 2021. On December 9, 2021, Commerce instructed Customs to collect **53** cash deposits on JDI entries at the 11.59% rate assigned in the AR 2 Final Results.

On December 28, 2021, other interested parties requested binational panel review of the AR 2 Final Results pursuant to USMCA Article 10.12. Two days later, JDI filed a complaint and commenced an appeal of Commerce's Cash Deposit Instructions before the CIT. JDI requested that the CIT:

(A) Enter judgment in favor of [JDI];

(B) Hold and declare that it was unlawful for Commerce to issue *Cash Deposit Instructions* assigning [JDI] the [antidumping duty] cash deposit rate determined for Non-Selected Companies in the final results of the 2019 [antidumping duty] review;

(C) Order Commerce to instruct [Customs] (1) to reinstate [JDI]'s lawful [antidumping duty] cash deposit rate of 1.57% for imports of subject merchandise produced and exported by [JDI] entered on or after December 2,

2021, and (2) to refund [antidumping duty] cash deposits provided for such entries in excess of the 1.57% rate; and

(D) Grant [JDI] such additional relief as the [CIT] may deem just and proper.

J.A. 49. In the complaint, JDI asserted that, although the CIT's jurisdiction "would normally lie under 28 U.S.C. § 1581(c)," the CIT instead has jurisdiction over its action pursuant to § 1581(i). J.A. 33–34.

In January 2023, the CIT concluded that it lacked subject matter jurisdiction under § 1581(i) to hear the action and granted the Government's motion to dismiss. JDI appeals. We have jurisdiction under 28 U.S.C. § 1295(a)(5).

### DISCUSSION

We review the CIT's dismissal for lack of subject matter jurisdiction and its statutory interpretation de novo as a question of law. *Norman G. Jensen, Inc. v. United States*, 687 F.3d 1325, 1328 (Fed. Cir. 2012). "The burden of establishing jurisdiction rests on the party invoking it." *Rimco*, 98 F.4th at 1051.

### I

We start our analysis by reviewing our precedent analyzing the CIT's residual jurisdiction under § 1581(i). In *Rimco*, our court held the CIT lacked jurisdiction under § 1581(i) because jurisdiction would have been available and the remedy adequate under § 1581(c). There, Rimco did not request administrative review of Commerce's antidumping duty or countervailing duty orders. Instead, after Commerce issued liquidation instructions directing Customs to assess entries subject to the orders, Rimco filed a protest challenging Customs' assessment of antidumping duties and countervailing duties on its imported goods as " 'excessive fines' in contravention of the Eighth Amendment," which Customs denied. *Rimco*, 98 F.4th at 1050–51. Rimco then filed an action before the CIT, seeking judicial review of Customs' denial of the protest, asserting, in pertinent part, that the CIT had exclusive jurisdiction under § 1581(i). *Id.* at 1051. The CIT dismissed for lack of subject matter jurisdiction. *Id.* at 1049.

On appeal, we explained that "[w]hether a party may properly invoke § 1581(i) is a two-step inquiry": (1) "we determine whether jurisdiction under a different subsection of § 1581 could have been available"; and if so, (2) "we ask whether the provided remedy would have been manifestly inadequate." *Id.* at 1053 (citing *Erwin Hymer Grp. N. Am., Inc. v. United States*, 930 F.3d 1370, 1375 (Fed. Cir. 2019)). Starting with the first step, we explained that "[b]ecause the availability of jurisdiction under other subsections of **\*54** § 1581 depends on the particular type of agency action challenged, we must first determine the true nature of an action." *Id.* at 1052–53 (explaining that the "true nature" factual inquiry "requires our court to identify the particular agency action underlying the claimed harm"). Viewing "the totality of Rimco's allegations," we agreed with the CIT "that the true nature of Rimco's action was to challenge Commerce's [antidumping duty] and [countervailing duty] rate determinations." *Id.* at 1053. We explained that "[i]nterested parties," such as Rimco, are directed to challenge Commerce's antidumping duty and countervailing duty determinations "via administrative review proceedings" and that "[s]ubsequent judicial review of such proceedings is available under the CIT's § 1581(c) exclusive jurisdiction." *Id.* at 1054.

Turning to step 2, we explained that because § 1581(c) jurisdiction was available, the CIT's § 1581(i) residual jurisdiction was unavailable unless the appellant could show that the remedy afforded by § 1581(c) would be manifestly inadequate. We further explained that a "manifestly inadequate remedy" is "an exercise in futility, or incapable of producing any result; failing utterly of the desired end through intrinsic defect; useless, ineffectual, vain." *Id.* (internal quotation marks omitted). Attempting to frame the § 1581(c) remedy as inadequate, Rimco unsuccessfully argued that Commerce "lacks institutional competence to judge the constitutionality of its own determinations." *Id.* We explained that: (1) "Commerce could have removed the constitutional issue by addressing the statutory appropriateness of its rate determinations"; and (2) even when Commerce is unable to make constitutional findings, it "will nevertheless serve its immensely useful record-development and fact-finding functions." *Id.* at 1055. Rimco "could have sought ... administrative review to sufficiently challenge" Commerce's antidumping duty and countervailing duty determinations, and, had Rimco been "dissatisfied with Commerce's administrative review determination, it could have rightfully sought judicial review on the record under the CIT's exclusive jurisdiction." *Id.* We

thus held that the "statutory process outlined by Congress in § 1581(c) ... is neither unworkable, nor futile." *Id.*

In *Consolidated Bearings*, on the other hand, we held that "no other subsection of 28 U.S.C. § 1581 was or could have been a basis for jurisdiction" and, thus, the CIT had correctly found jurisdiction under § 1581(i). *Consol. Bearings*, 348 F.3d at 999. There, the appellant brought suit in the CIT: (1) to challenge liquidation instructions from 1998, by which Commerce directed Customs to liquidate all entries of antifriction bearings from Germany that had not been liquidated by the instructions from 1997; and (2) to compel Commerce to apply the antidumping rates in the June 1997 amended final results to the appellant's entries of antifriction bearings from Germany. *Id.* at 1001. The appellant did not challenge or object to the final results; rather, it sought "application of those final results." *Id.* at 1002. We explained that, because the appellant was "not challenging the final results," § 1581(c) could not have been a source of jurisdiction. *Id.* (acknowledging that, had the appellant brought the action to challenge the final results of the administrative review, the argument that § 1581(c) jurisdiction could have been available might have more merit). Because no other subsection of § 1581 was or could have been a basis for jurisdiction, we did not reach step 2—whether the remedy would have been "manifestly inadequate." *See id.*

## II

Turning to the facts of this case, we conclude that the CIT did not err in holding **\*55** that it lacked subject matter jurisdiction under § 1581(i) because: (1) § 1581(c) jurisdiction could have been available to JDI, and (2) JDI has not met its burden to show that the alternative remedy (administrative review and binational panel review) would be manifestly inadequate. *See Rimco*, 98 F.4th at 1052.

JDI argues that the "true nature" of its action is a challenge to Commerce's "administration and enforcement" of the AR 2 Final Results, as opposed to a challenge to the Final Results themselves. Appellant's Br. 24. We are not persuaded.

Similar to *Rimco*, we view the "true nature" of JDI's suit as a challenge to the AR 2 Final Results. The "particular agency action underlying [JDI's] claimed harm" is Commerce's assignment of a cash deposit rate higher than 1.57% in the AR 2 preliminary results and Final Results. *Rimco*, 98 F.4th at

1052. Commerce explained in its November 23, 2021 Issues and Decision Memorandum for the AR 2 Final Results that it "will assign [JDI] a cash deposit rate based on the final results of this administrative review [i.e., AR 2]." J.A. 175. JDI confirmed on December 21, 2021, that "[t]he title of the final determination" for which it intended to commence judicial review is "Certain Softwood Lumber Products From Canada: Final Results of Antidumping Duty Administrative Review; 2019" published on December 2, 2021—not Commerce's instructions from December 9, 2021. J.A. 110. Accordingly, the proper source of the CIT's jurisdiction over JDI's action would have been § 1581(c). *See Consol. Bearings*, 348 F.3d at 1002 ("Subsection (c) grants the [CIT] jurisdiction over actions brought under 19 U.S.C. § 1516a], which includes challenges to the final results of an administrative review by a participant in that review."). In fact, JDI conceded in its complaint that the CIT's jurisdiction "would normally lie under 28 U.S.C. § 1581(c)." J.A. 34.

During oral argument, JDI nonetheless asserted that § 1581(c) jurisdiction was unavailable because "the final results of the 2019 review [i.e., AR 2] were taken to a USMCA binational panel." Oral Arg. at 1:59–2:11, https://oralarguments.cafc.uscourts.gov/default.aspx?fl=23-1652_06062024.mp3. We reject JDI's attempt to use § 1581(i) to make an end run around the binational panel's exclusive review. Indeed, § 1581(i)(2)(B) expressly prohibits JDI's assertion, stating that the subsection "shall not confer jurisdiction over an antidumping or countervailing duty determination which is reviewable by ... a binational panel under [19 U.S.C. § 1516a(g)]." Allowing the CIT to exercise concurrent jurisdiction with a binational panel "would strongly [and impermissibly] discourage the use of the [binational] panel system to challenge antidumping duties and make that procedure far less effective and useful than it was intended and expected to be." *Canadian Wheat*, 641 F.3d at 1351. USMCA Article 10.12 explicitly provides that the United States, Mexico, and Canada "shall ... maintain or amend [their] statutes or regulations to ensure that ... domestic procedures for judicial review of a final determination may not be commenced until the time for requesting a panel under paragraph 4 [i.e., 30 days following the publication date of the final determination] has expired." USMCA art. 10.12 ¶¶ 4, 15(c)(i). Section 1516a also provides that, "[f]or a determination with respect to which binational panel review has commenced," a CIT action "may not be commenced" until "the day after the date as of which" the binational panel "has dismissed binational panel review of the determination for lack of jurisdiction." 19 U.S.C. § 1516a(a)(5)(C); *see*

*also id.* § 1516a(g)(12) (providing for the "[t]ransfer of final determinations **\*56** for judicial review *upon suspension of article 10.12 of the USMCA*" (emphasis added)). It is clear from the USMCA and statutory language that when an antidumping duty determination is reviewable by a binational panel, judicial review by the CIT is unavailable unless and until the time for requesting a panel has expired or the panel has dismissed its review for lack of jurisdiction (or, the operation of USMCA Article 10.12 has been suspended).

JDI next asserts that the CIT has jurisdiction under § 1581(i) because neither binational panel review nor the administrative review process can provide adequate relief. Again, we disagree.

Binational panels have the authority to review a final antidumping determination and determine whether it "was in accordance with" the importing country's antidumping duty law, which "consists of the relevant statutes, legislative history, regulations, administrative practice, and judicial precedents to the extent that a court of the importing [country] would rely on such materials in reviewing a final determination." USMCA art. 10.12 ¶ 2. And if the panel remands the determination (instead of upholding it), the administering authority—i.e., Commerce—"*shall*, within the period specified by the panel ..., take action *not inconsistent with the decision of the panel*." 19 U.S.C. § 1516a(g)(7)(A) (emphases added); *see also* USMCA art. 10.12 ¶ 8. Accordingly, here, if the binational panel holds that Commerce's AR 2 Final Results are not in accordance with U.S. antidumping duty law and remands, Commerce must take action consistent with the panel's decision, which is "binding on the involved Parties." USMCA art. 10.12 ¶ 9.

In *Canadian Wheat*, a NAFTA binational panel found that the record lacked substantial evidence that the "dumping" at issue had materially injured the domestic wheat industry and remanded the case to the International Trade Commission for further consideration. *Canadian Wheat*, 641 F.3d at 1347. On remand, the Commission found that the domestic industry was not "materially injured" by the importation of the Canadian wheat, which the NAFTA panel then affirmed. *Id.* Commerce then revoked the antidumping duty order, while entries were still "suspended and unliquidated." *See id.* at 1347–49. We explained that "[o]nce the NAFTA panel had finally determined that the unliquidated antidumping duty order was invalid ... Commerce had no valid basis for retaining the unliquidated duties that the Canadians had deposited pursuant to that order." *Id.* at 1349–50 ("One

would expect that, after an antidumping duty order has been finally invalidated [by a binational panel], Commerce thereafter would refuse to enforce it."). Accordingly, here, if the binational panel invalidates the AR 2 Final Results, Commerce would not assess JDI's suspended and unliquidated entries at AR 2's final 11.59% rate, and JDI would receive appropriate refunds for deposits made at that higher rate. *See* 19 U.S.C. § 1516a(g)(5)(C) (providing for the suspension of liquidation); USMCA art. 10.12 ¶ 15(a) (a binational panel may enter a final decision that a refund is due). Accordingly, we reject JDI's argument that binational panel review and administrative review would be manifestly inadequate.

JDI nonetheless argues that USMCA panel review of the AR 2 Final Results would be manifestly inadequate because such panels lack equitable or injunctive power. Although a remand by the binational panel differs from an injunction, the inquiry here is not whether the provided remedy would have been equal to JDI's desired remedy; rather, it is whether the provided remedy would have been manifestly inadequate. *E.g.,* **\*57** *Rimco*, 98 F.4th at 1054. Because JDI has not shown that administrative review and USMCA panel review would be manifestly inadequate, § 1581(i) jurisdiction is improper.

CONCLUSION

We have considered JDI's other arguments and find them unpersuasive. For the foregoing reasons, we conclude that the Court of International Trade did not err in dismissing the case for lack of subject matter jurisdiction.

**AFFIRMED**

**All Citations**

119 F.4th 48

---

### Footnotes

1    Honorable Claire C. Cecchi, District Judge, United States District Court for the District of New Jersey, sitting by designation.

---

**End of Document**                                                                    © 2024 Thomson Reuters. No claim to original U.S. Government Works.

# United States Court of Appeals
# for the Federal Circuit

---

**J.D. IRVING, LIMITED,**

*Plaintiff-Appellant*

**v.**

**UNITED STATES, DEPARTMENT OF COMMERCE,**

*Defendants-Appellees*

---

2023-1652

---

Appeal from the United States Court of International Trade in No. 1:21-cv-00641-TMR, Judge Timothy M. Reif.

---

## JUDGMENT

---

THIS CAUSE having been considered, it is

ORDERED AND ADJUDGED:

**AFFIRMED**

FOR THE COURT

October 10, 2024
Date

Jarrett B. Perlow
Clerk of Court

(Form 19)

# CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATIONS

## CAFC Court No. 2023-1652
## <u>J.D. IRVING, LTD. v. US</u>

The foregoing filing complies with the relevant type-volume limitation of the Federal Rules of Appellate Procedure and Federal Circuit Rules because it meets one of the following:

    ☑    the filing has been prepared using a proportionally-spaced typeface and includes 2,203 words.

    ☐    the filing has been prepared using a monospaced typeface and includes _____ lines of text.

    ☐    the filing contains _____ pages / _____ words / _____ lines of text, which does not exceed the maximum authorized by this court's order (ECF No. _____).

Date: November 22, 2024          Signature:      /s/ Jay C. Campbell

                                       Name:      Jay C. Campbell

# CERTIFICATE OF SERVICE

## J.D. IRVING, LTD. v. US
### CAFC Court No. 2023-1652

I certify that I served a copy of the foregoing filing on November 22, 2024 by E-mail on the below individuals at the following locations.

| Person Served | Service Location (E-mail) |
| --- | --- |
| Eric Laufgraben | eric.e.laufgraben@usdoj.gov |
| Claudia Burke | claudia.burke@usdoj.gov |
| Elio Gonzalez | elio.gonzalez@trade.gov |
| Patricia M. McCarthy | patricia.mccarthy@usdoj.gov |

Date: November 22, 2024

/s/ Jay C. Campbell
Jay C. Campbell
WHITE & CASE LLP
701 Thirteenth Street, NW
Washington, DC 20005
(202) 626-3600